**AMAREX, INC., Paul Swofford, Herbert G. Davis, Robert A. Northcutt, Thomas E. Cochrane, Truman Logsdon and Harold W. Hanke, Appellees,**

v.

**Margaret Ann SELL, Donald L. Sutherland, Janel McCall, formerly Pantle, Clara Fern Smith, Billy Fields, Dale Fields, Betty Fields, and unknown and contingent remaindermen of Lena R. Fields, Life Tenant, Appellants.**

**Nos. 46935 and 47081.**

Supreme Court Oklahoma.

July 5, 1977.

---

Rogers & DeVilliers by W. Rodney DeVilliers, Oklahoma City, for appellee, Amarex, Inc.

Fischl, Culp, McMillin & Kern by Michael A. Cawley, Ardmore, for appellants.

LAVENDER, Vice Chief Justice:

William O. Whitehurst died owning some 400 acres located in Ellis County. This ownership included surface and all the minerals, except one-half of the minerals as to 220 acres. By will and through the final decree of his estate, this ownership passed to his daughter, Lena R. Fields, as life tenant, and her living children at the time of her death, as contingent remaindermen. Thereafter, the life tenant gave an oil and gas lease. This lease was ratified by all her adult children. Another oil and gas lease was given by the guardian of all her minor children. The owner of these leases filed a forced pooling application before the Corpo-

ration Commission as to any unleased interest. Notice was given in the following form:

"Lena R. Fields, if she be living, and her known and unknown heirs, executors, administrators, devisees, trustees and assigns, immediate and remote, *if any of them be dead*, and all other interested parties." (Emphasis added.)

Corporation Commission order was entered showing no protest. The order pooled the Morrow Formation on 640 acre drilling and spacing units already established. A $25.00 per acre bonus was fixed as bonus in lieu of participation in the working interest. Cost of drilling a well was set at $150,000. Owners of the outstanding mineral interest in the drilling and spacing units were required to elect within ten days to participate in the working interest or accept the bonus in lieu thereof. An owner electing to participate had 30 days to pay his portion of the drilling cost.

Amarex, Inc. (Amarex, leasehold owner, and appellee) became the principal working interest owner under the leases and the pooling order. After production, Amarex brought an action for appointment of a trustee to receive and invest royalty income under 60 O.S.1971, §§ 71 et seq.[1] Through cross-petitions, the life tenant (Fields), the contingent remaindermen in being (Fields known children), and the unknown contingent remaindermen (Fields' unknown chil-

---

1. § 71. Appointment of trustee where there are contingent remainders.—

"In any case where, by will or deed or other instrument, title to real estate is in a tenant for life or other person having the right to the use thereof and income therefrom, with the remainder interest left to one or more contingent remaindermen, so that it is impossible to determine until the death of the life tenant or the future happening of some other determining event, what interest, if any, the various contingent remaindermen will take; the district court, upon the application of the life tenant, shall have jurisdiction and authority to appoint a trustee under proper bond, over said real estate, for the purpose of leasing the same for oil and gas developing purposes."

"§ 72. Trustee may make oil and gas leases and other mining leases.—

"Said trustee shall have the power and authority to make valid oil and gas leases and other mining leases, upon said lands, for a term

not to exceed ten (10) years, and as long thereafter as oil, gas or other minerals may be produced in paying quantities, said leases to be executed and approved under the same procedure now followed in leasing lands for oil and gas purposes in guardianships and estates, the bonus and rentals therefrom to be paid to the life tenant or other person entitled thereto."

"§ 73. Trustee's authority to invest income from royalties—Payments to life tenant or other person.—

"Under proper court order the trustee shall be authorized to invest income from royalties in like manner as funds of guardianships may be invested, which investments shall remain intact until the ultimate taker is determined and shall then be paid over to such ultimate taker and the trust closed. Income from investments shall be paid to the life tenant or other person entitled thereto."

dren) through guardian ad litem placed at issue the validity of the leasehold estate and sought appointment of a trustee. Additional third parties were joined as alleged owners of interest in the leasehold estate, having the same basic position as Amarex. Subsequently, the life tenant withdrew her cross-petition and supported the leaseholder, Amarex. Trial court granted judgment to Amarex on its petition, appointed a trustee, and decreed the oil and gas leases to be valid. The contingent remaindermen in being and the unknown contingent remaindermen by guardian ad litem appeal.

Appellants argue the exclusiveness of the procedure under §§ 71, 72, and 73 for the taking of an oil and gas lease on mineral interest owned by a life tenant with the remainder interest left to contingent remaindermen. Appellants ask this court to follow *Rudy v. Ellis*, 236 S.W.2d 466 (Ky., 1951). They also contend lack of consideration for certain ratifications and leases taken from the contingent remaindermen in being. Appellee, Amarex, argues against exclusiveness. It would distinguish and not follow *Rudy, supra.* Amarex contends any outstanding mineral interest not covered by its leases and their ratifications comes to them through the forced pooling order.

 Here, all parties sought the appointment of a trustee under § 71. Suggestion is made the trial court did not have jurisdiction since the application for a trustee was not by the life tenant as therein provided. We need not reach that issue for the life tenant did make application by her cross-petition. Withdrawing that cross-petition did not defeat jurisdiction. Jurisdiction of a court once acquired is not lost or divested by subsequent events. *Jones Drilling Company v. Woodson*, Okl., 509 P.2d 116 (1973); *Turk v. Coryell*, Okl., 419 P.2d 555 (1966).

The *Rudy* decision has been criticized for its exclusive position on statutory procedure for the leasing of a life estate and contingent future interest.[2] Morris, "Future Interests in Oil and Gas Law," 3 Rocky Mountain Mineral Law Institute 597, 616 through 630.[3] In discussing the Oklahoma statute,

---

2. See also Mosburg, *Oil and Gas, and the Defeasible Fee*, 12 Okla.L.Rev. 233, 261, and quoting at p. 263.

"The result of the *Rudy* case is so unjustifiable and has been so ably criticized by Mr. Morris that it seems unthinkable that our court would follow that unfortunate decision. The very fact that our court has in the past upheld leases from the holder of a defeasible fee buttresses this argument, since under the view of the *Rudy* case these leases would be void. Furthermore, as Mr. Morris points out, the purpose of the statutes authorizing the appointment of a trustee to execute oil and gas leases covering contingent remainders is to increase the alienability of real property. Where, as in the *Rudy* case, a proposed application of the statute would increase the burden on alienability, the statute should not be so applied." (Footnote deleted.)

3. Quoting at p. 621 and speaking of *Rudy, supra:*

"So here we have a case which suggests in the strongest of language, that whenever future interests are created *the only method* by which a valid oil and gas lease can be secured is to proceed in accordance with the procedure outlined by statute. With this decision the writer is in most violent disagreement. For here was a case *where all of the ascertained persons who were alive and who had either present or contingent future interests had solemnly executed*

---

an oil and gas lease. Presumably they were paid bonuses for the leases which they had executed. Pursuant to those leases the lessee developed the land. *There was no one complaining or alleging that waste was being committed* with respect to his interest. It was shown that the testator's son had two sons, who, of course, had contingent remainders under the will of their grandfather. Guardians' leases had been given on the interests of these two minor children. If these two minor sons survived the life tenant and if they had no other brothers or sisters born, the title to the land would ultimately vest in them. If that eventuality occurred the lessee would have had an oil and gas lease *covering every interest in the land.*

"Assuming *arguendo* that another child might be born to the life tenant who would survive him, the guardians' leases should still be good on the other two minors' interests. If they survived the life tenant the lessee would have good oil and gas leases on a ⅔ interest with an outstanding ⅓ not subject to the lease.

"Again it should be emphasized that (1) *every ascertained adult* who had an interest in this land and (2) apparently *every minor* who had an interest in this land, had executed an oil and gas lease to the lessee, who went in and drilled. The lessee had the title examined before he drilled. Presumably his attorney ad-

that author finds compelling reasons for a contrary view. First, the statutory language makes no suggestion a contingent future interest owner is powerless to lease, authorizing a judicial sale in certain instances does not foreclose a voluntary conveyance, and the policy of the law favors the free alienability of future interest. Second, these statutes are designed *to facilitate* leasing as affected by future interest, and *not to restrict* leasing.[4] The writer's position is to give the court-appointed trustee the flexibility to lease those interests which have not been leased and leave undisturbed those interests previously leased.[5]

Another commentary recognizes the life tenant and the owner of the future interest may join in the execution of a valid oil and gas lease in which case the lessee acquires full right. 1 Kuntz, "The Law of Oil and Gas," § 8.4, p. 186.[6]

■ The criticism of *Rudy, supra,* is justified. The rationale against the exclusive-

---

vised him that he had valid and subsisting leases from *the life tenant and from all ascertainable persons in being who owned future interests;* that no one could enjoin him for waste. He probably assumed as a business risk the possibility of this title might eventually vest. Presumably that was a risk the lessee was willing to run, proceeding on the legitimate theory that he had valid and subsisting leases from all ascertainable persons in being."

4. Morris, *Future Interests in Oil and Gas Law,* 3 Rocky Mountain Mineral Law Institute, 597, 627.

"It is respectfully submitted that no sound reasons exist which would warrant or authorize a court in holding in any of the jurisdictions mentioned that these statutes provide the *exclusive* means by which land affected by future interests may be leased. To the writer it would seem that there are compelling reasons to the contrary. A few will be stated.

"First. The language of the statutes does not even suggest that persons owning contingent future interests are *powerless* to lease their future interests if they have an opportunity to do so. In this connection it should be said that there are a number of states which have statutes authorizing a judicial sale of the fee simple title to land if future interests have been created. Yet so far as the writer knows *no one has ever contended* in these jurisdictions that a future interest owner could not voluntarily convey his interest simply because there was a statute authorizing a judicial sale in certain instances. As has heretofore been stated, the policy of the law favors the free alienability of future interests. If it is a desirable policy to permit a man to *deed* away his executory interest of contingent remainder is it equally desirable to permit him to *execute an oil and gas lease covering his interest?*

"Second. These statutes are intended to facilitate the leasing of land affected by future interests. Particularly is this so when future interests have been created in favor of unknown, unborn or unascertained persons. When future interests are created in favor of unborn persons, only if a court of equity appoints a trustee to execute an oil and gas lease is it possible for a full interest lease to be secured. But as has heretofore been demonstrated, if these statutes circumscribe and prohibit persons who are ascertainable and in being, from executing oil and gas leases, which they want to execute, they do not make it easier to lease. Or, if these statutes provide the wedge by which those persons who have executed oil and gas leases can come in and attack their validity on the theory that the statute provides the sole method by which land may be leased, then surely these statutes will heavily clog free alienation."

5. See n. 4, *supra,* at p. 629.

"To put it another way: If at the time the petition is filed seeking the appointment of a trustee to lease for oil and gas, it appears that some of the owners of present or future interests have already leased to a lessee of their own choosing, the court should have the power to lease the 'real estate,' *subject to the valid and subsisting oil and gas leases already in existence.* The desirability of this procedure is recognized by the Restatement in cases involving judicial sales. There it is said:

The interest which is ordered sold in accordance with the rule stated in this Section must constitute an 'ownership' but does not necessarily constitute *complete property* in the thing affected. The existence of an outstanding mortgage, or lien, or easement relative to the thing sought to be sold, is no barrier to such sale. Thus the interest ordered to be sold can be an estate in fee simple subject to a mortgage, subject to a judgment lien, subject to an easement, or subject to an estate for years. . . .

With this kind of flexibility, the Chancellor could, if he deemed it advisable, authorize a lease on those interests which have not been leased and leave undisturbed those interests previously leased." (Footnote deleted.)

6. "The life tenant and the owner of the future interest may join in the execution of a valid oil and gas lease,[18] in which case the lessee acquires full rights."

[18]*Shields v. Johnson,* 124 Kan. 155, 257 P. 926 (1927); *Meredith v. Meredith,* 193 Ky. 192, 235 S.W. 757 (1921); *Barnes v. Keys,* 36 Okl. 6, 127 P. 261 (1912).

ness of the § 71 et seq. procedure is more persuasive. We do not follow that position of the *Rudy* decision.

■ In present case, the life tenant gave a lease. That lease was ratified by all her adult children. Although not really argued, there is some suggestion one of the children, Clara Fern Smith, received no consideration for that ratification. She testified as to receiving no payment, but she did establish she wanted to see her mother, the life tenant, have the money and executed the ratification to aid her mother in that objective. Again, although not really argued, there is some suggestion three children were minors when they executed a ratification of their mother's (the life tenant's) lease. That same interest of the minor children comes to Amarex through a lease from those minors' guardian. No attack is made on that guardianship lease. Amarex need not rely on the ratifications by the minors.

■ As heretofore indicated, the life tenant withdrew her cross-petition and no longer contests the validity of her lease. With our view that § 71 is not exclusive, we hold the leasehold estate as to the contingent remaindermen in being through either ratification of the life tenant's lease or the guardianship lease to be valid and binding as to those parties.

■ We have difficulty in sustaining the Amarex position the forced pooling order covers an outstanding mineral interest that might be owned by a contingent remainderman not now in being. This possibility is indicated at 1 Kuntz, "Life Estates and Complementary Future Interest," § 8.3 saying:

"It is possible that the local statutes relating to partition and relating to compulsory pooling or unitization may also provide a device by which leasing or development might be accomplished without consent of all parties."

In the forced pooling procedure here, notice was given to the life tenant, if she be living, and her known and unknown heirs, *if any of them be dead.* The life tenant and her known children could not be force pooled. Amarex already had a lease from them. The life tenant was known to be alive. Her unknown children were given notice only if they be dead. The contingent remaindermen would receive a vested or fixed interest if they survived the life tenant. The Corporation Commission order required of the outstanding mineral interest owners to make certain elections as to participating in the working interest and the paying of drilling cost. No party in being was before the Corporation Commission to make that election for the contingent remaindermen not in being. The exclusiveness of § 71 is in the seeking an oil and gas lease covering the future interest of a contingent remainderman, not in being. If the trustee refused to lease as allowed by § 72, then forced pooling would be available as to a future interest of contingent remainderman not then in being. Notice could be had on the trustee. There would be a party in being who could carry out the necessary elections of the Corporation Commission order. We find there is no oil and gas leasehold estate in Amarex as to the future interest of contingent remaindermen, not in being. The trial court is reversed in that regard.

It is noted trial court named as trustee the entity sought by the appellees. That appointment is confirmed.

Affirmed in part and reversed in part.

HODGES, C. J., and WILLIAMS, IRWIN, BERRY, BARNES, SIMMS, and DOOLIN, JJ., concur.