2011 OK 84

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**George L. MOTHERSHED, Respondent.**

**SCBD No. 4687, OBAD No. 1526.**

Supreme Court of Oklahoma.

Oct. 11, 2011.

As Corrected Oct. 18, 2011.

Rehearing Denied Nov. 21, 2011.

See also, 66 P.3d 420; 812 P.2d 382.

Gina L. Hendryx, Katherine M. Ogden, for Complainant Oklahoma Bar Association, Oklahoma City, Oklahoma.

George L. Mothershed, Pro Se, Glendale, Arizona.

EDMONDSON, J.

¶1 Respondent filed in this Court a petition to vacate the opinion of this Court which disbarred him from practicing law in Oklahoma. We conclude that the arguments offered by Respondent for vacating the disbarment are without merit and we deny the petition to vacate.

## I. Introduction

¶2 George L. Mothershed, Respondent, was disbarred by this Court in 2003.[1] In July 2005, Respondent filed a Motion for Clarification and on July 22, 2005, the Chief Justice of this Court issued an order stating that "This Bar Disciplinary matter was fully concluded March 18, 2003, upon entry of order disbarring respondent." In December 2010, Respondent filed a petition to vacate

---

1. *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 2003 OK 34, 66 P.3d 420.

which challenges his disbarment, and requests that the Court set aside "all findings of fact and conclusions of law, orders, reports, and final report and/or judgment of the Trial Panel of February 7, 2002." In April 2011 Respondent filed a document herein for the purpose of making a "reservation of all and any of his Federal claims, rights, defenses, issues, and questions." We construe this document as an amendment to his petition to vacate. Respondent argues that the Trial Panel in his 2002 disciplinary proceeding lacked subject matter jurisdiction and personal jurisdiction of Respondent. Because Respondent argues that the face of the record in his former disciplinary proceedings shows this lack of jurisdiction we must examine that record.

## II. Respondent's Allegations and His Former Disciplinary Proceedings

¶ 3 Formal proceedings may be initiated with a formal complaint filed with the Supreme Court. Rule 6.1, Rules Governing Disciplinary Proceedings.[2] An "Affidavit for Proof of Service of Complaint" filed of record herein shows that the Rule 6.1 formal complaint was mailed to Respondent by certified mail, restricted delivery, with return receipt requested. Additionally, an Affidavit by a Staff Investigator of the State Bar of Arizona shows that the Rule 6.1 formal complaint was personally served on Respondent.[3] The return for the mailing shows a signature, but apparently not the signature of Respondent. The affidavit of personal service filed of record herein shows that Respondent was personally served with the Rule 6.1 formal complaint.

¶ 4 On February 15, 2002, Respondent's Answer was filed with the Court. He denied "each and every allegation of the complaint." He also alleged ten enumerated "affirmative defenses."[4] His answer did not raise any issue relating to personal jurisdiction or issuance of summons.

¶ 5 On the same day that the Rule 6.1 formal complaint was filed with the Clerk of this Court, February 15, 2002, Respondent filed a "Motion to Dismiss" and a "Memorandum In Support Respondent's Motion to Dismiss." Therein he argued that the Oklahoma Supreme Court lacked subject matter jurisdiction to professionally discipline Respondent because the claims made in support of discipline involved his conduct in proceedings before the United States Bankruptcy Court, District of Arizona. He argued that only that Bankruptcy Court had jurisdiction to question and examine his professional conduct therein.[5] The motion to dismiss and accompanying memorandum made no objec-

---

**2.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.1:

Formal proceedings in matters involving misconduct by lawyers shall be brought by direction of the Professional Responsibility Commission.

The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court. Upon the expiration of the respondent's time to answer, the complaint and the answer, if any, shall thereupon be lodged with the Clerk of the Supreme Court and the complaint, as well as all further filings and proceedings with respect thereto, shall be a matter of public record. Nine copies shall be filed with each original instrument.

**3.** Affidavit for Proof of Service of Complaint, filed February 13, 2002, on the Office of the Chief Justice Bar Docket, and on February 15, 2002, in Supreme Court Bar Docket (S.C.B.D.) No. 4687.

**4.** The allegations of the defenses may be summarized as follows: (1) estoppel, (2) that Arizona rules of admission to its Bar were unconstitution-

al, (3) that Respondent possessed rights pursuant to U.S. Const. Amend. 5, Equal Protection Clause, and the "Privileges and Immunities Clause" of that Constitution to practice law in Arizona, (4) laches barred allegations of his unprofessional conduct in 1998, (5) all of the orders entered against him by various other courts were void, (6) statute of limitations (7) the Oklahoma Bar Association's allegations were barred by "waiver," (8) Fifth Amendment privilege against self incrimination entitled him to refuse all requests for information and documents from the Bar Association, (9) only the United States Bankruptcy Court for Arizona had jurisdiction to examine Respondent's conduct, and (10) his appeal in the United States Court of Appeals for the Ninth Circuit would be dispositive of the issues, and thus prevent the Justices of Oklahoma Supreme Court from "becoming embroiled in litigation in Arizona … and possible substantial personal civil liability and damages."

**5.** Respondent's Motion to Dismiss, S.C.B.D. No. 4687 (Feb. 15, 2002) p. 1.

tion based upon personal jurisdiction of Respondent in the Oklahoma professional disciplinary proceeding.

¶ 6 Four days later, on February 19, 2002, Respondent filed a Motion to Stay or Continue the disciplinary proceeding. He renewed the argument in his motion to dismiss. He argued that he had appealed the order of a Bankruptcy Court judge which had prevented him from practicing law in the Bankruptcy Court, and that the appeal was pending before the United States Court of Appeals for the Ninth Circuit, Case No. 02–15109. His Motion to Stay also argued that the Bar Association used void orders of the Bankruptcy Court as evidence to support the allegations made against him, and that these allegations would be rendered moot by an appellate decision in his favor.[6] Respondent did not address the fact that Counts I and II

in the formal complaint did not involve his conduct in bankruptcy court proceedings. Respondent's motion did not raise the issue of personal jurisdiction.

¶ 7 Respondent's arguments in his motion to dismiss and motion for stay provided numerous citations on the authority of bankruptcy courts. However, his arguments did not address Bar licensing and disciplinary jurisdiction in the context of a lawyer's conduct before federal courts,[7] or professional licensing review of a lawyer's attorney-client relationship in a controversy before a federal court.[8] He did not address the related issue when licensing courts impose discipline for conduct committed by the lawyer before another court where reciprocal discipline is used,[9] or the type of conduct licensing courts examine when the conduct of a lawyer is questioned.[10]

6. Nine months after Respondent filed his motion to stay in his disciplinary proceeding the United States Court of Appeals for the Ninth Circuit adjudicated his appellate claims therein to be unpersuasive, lacking merit, and failing to demonstrate that the lower court abused its discretion. The decision of the Ninth Circuit is unofficially reported at *Mothershed v. Curley*, 51 Fed. Appx. 264, 2002 WL 31650849 (9th Cir., Nov. 18, 2002).

7. Our recent opinion, *In re Reinstatement of Mooreland–Rucker*, 2010 OK 43, 237 P.3d 784, we explained that a particular court's limited power to limit a lawyer's practice before that court should not be confused with the state's licensing of that right to practice law generally. *Id.* at ¶ 13, 237 P.3d at 788.

This Court has imposed discipline for a lawyer's unprofessional conduct before federal courts, including conduct before bankruptcy courts. *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Chappell*, 2004 OK 41, 93 P.3d 25; *State ex rel. Oklahoma Bar Ass'n v. Burnett*, 2004 OK 31, 91 P.3d 641; *State ex rel. Oklahoma Bar Ass'n v. Stewart*, 2003 OK 13, 71 P.3d 1; *State ex rel. Oklahoma Bar Ass'n v. Jenkins*, 2001 OK 54, 27 P.3d 91; *State ex rel. Oklahoma Bar Ass'n v. Tweedy*, 2000 OK 37, 52 P.3d 1003; *State ex rel. Oklahoma Bar Ass'n v. Patmon*, 1997 OK 62, 1997 OK 64, 939 P.2d 1155; *State ex rel. Oklahoma Bar Ass'n v. Wolfe*, 1997 OK 47, 937 P.2d 988; *State ex rel. Oklahoma Bar Ass'n v. English*, 1993 OK 68, 853 P.2d 173; *State ex rel. Oklahoma Bar Ass'n v. Robertson*, 1980 OK 176, 620 P.2d 382; *State ex rel. Oklahoma Bar Ass'n v. O'Bryan*, 1963 OK 151, 385 P.2d 876.

8. This Court's disciplinary jurisdiction includes professional ethical issues *pertaining to the attorney-client relationship* in a controversy before a

federal court. *State ex rel. Oklahoma Bar Ass'n v. Weeks*, 1998 OK 83, 969 P.2d 347.

9. This Court imposes reciprocal discipline. *State ex rel. Oklahoma Bar Ass'n v. Heinen*, 2002 OK 81, ¶ 4, 60 P.3d 1018, 1019 (Pursuant to Rule 7.7 of the Rules Governing Disciplinary Proceedings a lawyer may be professionally disciplined by this Court because of the lawyer's professional discipline by the highest court of another state or a federal court.); *State ex rel. Oklahoma Bar Ass'n v. Patterson*, 2001 OK 51, 28 P.3d 551 (same). The United States Supreme Court and the Circuit Courts of United States Court of Appeals also impose reciprocal discipline. See, for example, *In re Roman*, 601 F.3d 189 (2d Cir. 2010), where the court discussed both reciprocal discipline in the Circuit Courts as well as application of *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917). *In re Roman*, 601 F.3d at 192–194. Respondent's discipline herein was *not* imposed as reciprocal discipline, but the nature of his arguments in his motions prior to disbarment are sufficiently broad to challenge the authority of any court imposing any form of professional discipline other than the court before which the respondent committed his professional misconduct.

10. Our recent opinion, *In re Reinstatement of Mooreland–Rucker*, 2010 OK 43, 237 P.3d 784, stated that "this Court's disciplinary authority is far-reaching and permits this Court to exercise jurisdiction over Oklahoma Bar members regardless of where the lawyer's conduct occurs." *Id.* at ¶ 18, 237 P.3d at 790, citing, RGDP Rule 1.1, Okla. Stat. tit. 5, ch. 1, app. 1–A (2001) and ORPC Rule 8.5(a), Okla. Stat. tit. 5, ch. 1, app. 3–A (2001). This court has the inherent power to discipline lawyers *qua* officers of the court,

¶ 8 One day later, on February 20, 2002, he filed a Motion in Limine asking the Supreme Court to bar the Complainant from introducing any evidence against Respondent in the disciplinary proceeding because the Bar Association had not provided a complete list of witnesses it intended to rely upon for Respondent's Trial Panel Hearing. Rule 6.8 of the Rules Governing Disciplinary Proceedings provides for providing a list of witnesses to a respondent fifteen (15) days before the hearing.[11] He did not argue that the timing of a Rule 6.8 disclosure would prejudice his ability to defend the disciplinary proceeding brought against him. Respondent did not mention Rule 6.8. Respondent's motion did not raise the issue of personal jurisdiction.

¶ 9 A few days later on March 6, 2002, Respondent filed another motion to dismiss. He stated that he had not received a witness list, and that disclosure was required by the procedure in criminal cases as provided by 22 O.S.2001 § 2002. Respondent did not address Rule 6.8 or the discovery allowed by that Rule. Respondent's motion did not raise the issue of personal jurisdiction.

¶ 10 On March 11, 2002, Respondent filed a supplement to his motion to dismiss and argued that a witness list was required by both 22 O.S.2001 § 2002 and Rule 6.8, and that no witness list had been provided to him. Respondent's supplement did not raise the issue of personal jurisdiction. On the same day, Complainant requested leave to amend the formal complaint against Respondent. Gen-

erally, amending the formal complaint creates an extension of time for some deadlines, unless waived by a respondent, because a respondent in a disciplinary proceeding is provided an opportunity to file an answer to the amended complaint. Rule 6.5, Rules Governing Disciplinary Proceedings.[12]

¶ 11 A telephone conference call was held on March 11, 2002, and as a result two orders were issued by the Presiding Master and filed on March 14, 2002. The first order, a scheduling order, was filed on March 14, 2002, and it provided dates for completion of discovery, stipulations, trial briefs, exchange of lists of witnesses and exhibits, proposed findings and conclusions, pretrial conference, filing of pretrial order, and the hearing (or trial) before the trial panel. The hearing date was set for May 20–21, 2002. That order does not memorialize any objections by any party as to the dates scheduled therein. The scheduling order is signed by the Presiding Master of the Trial Panel.

¶ 12 In the second order the Presiding Master set forth the arguments of the parties. He memorialized that the Bar Association requested an extension of the hearing date to allow time for the Bar to gather evidence and to take depositions in Arizona. The order stated that Respondent objected to the Presiding Master conducting a conference call on the grounds that the Respondent had not been provided a list of witnesses and exhibits at least fifteen days prior to the hearing before the trial panel.[13] The order

and this power extends to acts outside the scope of one's professional practice *where the offending conduct bears on the practitioner's fitness to practice law. State ex rel. Oklahoma Bar Ass'n v. Braswell*, 1998 OK 49, ¶ 40, 975 P.2d 401. *See also State ex rel. Oklahoma Bar Ass'n v. Rogers*, 2006 OK 54, ¶ 11, 142 P.3d 428, 433 quoting *State ex rel. Oklahoma Bar Ass'n v. Aston*, 2003 OK 101, ¶ 11, 81 P.3d 676, 678 (fitness to practice law encompasses more than an absence of detriment to specific clients.).

11. 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.8:

(a) Depositions may be taken and read, and documents and things may be required to be produced for inspection and/or copying, in the same manner as in civil cases;

(b) Upon written request made fifteen (15) days before the trial of the cause, the respondent

or his attorney shall be given the names and addresses of witnesses to be used by the prosecution; and

(c) The General Counsel, with the approval of the Professional Responsibility Commission, shall have the authority to enter into stipulations of fact and law concerning a formal complaint against a respondent lawyer, and a recommendation as to discipline to be imposed.

12. 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.5:

After the complaint has been filed, the General Counsel may amend the complaint to add or delete allegations as permitted under the general rules of civil procedure, subject to the respondent's right to file an answer within twenty (20) days after such amendment.

13. Order, S.C.B.D. No. 4687 (March 14, 2002) at p. 3.

has no other objection by Respondent to scheduling the hearing in May 2002. That order also granted leave for the Bar Association to amend its formal complaint with additional allegations of unprofessional conduct allegedly committed by Respondent.

¶ 13 On April 1, 2002, Respondent filed an amended formal answer to the Complaint and Amended Complaint. He denied "each and every allegation of the complaint and amended complaint" and alleged twelve "affirmative defenses." [14] None of his defenses raised the issue of personal jurisdiction or issuance of summons. In his amended answer he raised a claim that under Rule 6.7 of the Rules Governing Disciplinary Proceedings the hearing before the trial panel was required to be held within sixty days from the date the trial panel was appointed. [15] He alleged that noncompliance with Rule 6.7 caused the trial panel to lose subject matter jurisdiction. He argued that his alleged professional misconduct occurred on or before 1998, that he was prejudiced by the Bar not filing the formal complaint until January 2002, and that witness W. White "and other prospective witnesses who would have been able to testify are now deceased or otherwise unavailable." [16] Respondent's amended answer contained no allegations of prejudice suffered by him as a result of the alleged violation of Rule 6.7 [17]

¶ 14 On April 1, 2002, Respondent filed in his disciplinary proceeding a Cross–Complaint against a member of the Oklahoma Bar Association (G.B.) and a Counter–Complaint against the Oklahoma Bar Association. Respondent argued that he had a grievance of alleged unprofessional conduct against a member of the Bar, and that the Bar Association had not proceeded against lawyer G.B. with a disciplinary proceeding. [18] The Bar Association responded and challenged Respondent's authority to make such claims in Respondent's disciplinary proceeding. The Bar also challenged the Supreme Court's authority to review decisions of the Professional Responsibility Commission and the Office of the General Counsel which determine whether an accused lawyer should be investigated or formally charged with professional misconduct. On April 17, 2002, Respondent filed a reply. Therein he argued that his Cross–Complaint and Counter–Complaint were a "common law *qui tam* proceeding suing in behalf of the State of Oklahoma for

14. The twelve numbered defenses may be summarized as presenting allegations that: (1) discipline was barred by estoppel, (2) Arizona rules for admission to the bar were unconstitutional, (3) Arizona rules for admission were unconstitutional, (4) discipline was barred by laches, (5) orders of other courts were void and could not be used as a basis for discipline, (6) discipline was barred by a statute of limitations, (7) the Bar Association waived its right to discipline Respondent, (8) Respondent invoked his Fifth Amendment right against self-incrimination and argued that he was not required to give any evidence to the Bar Association, (9) only the United States Bankruptcy Court had jurisdiction over Respondent's professional conduct before that court, (10) many of the issue were before the Ninth Circuit appellate court for adjudication, (11) Respondent had a right to a hearing within 60 days of the filing of the Complaint and his right to a speedy trial had been violated, and (12) Respondent's right to a speedy trial had been violated.

15. 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.7:

The Chief Master or Vice–Chief Master of the Professional Responsibility Tribunal shall notify the respondent and the General Counsel of the appointment and membership of the Trial Panel and of the time and place for hearing, which shall not be less than thirty (30) nor more than sixty (60) days from the date of appointment of the Trial Panel. Extension of this period may be granted by the Chief Master (or the Vice–Chief Master, in case of the unavailability of the Chief Master) for good cause shown.

16. Respondent's "First Amended Answer" S.C.B.D. No. 4687 (April 1, 2002) at p. 4.

17. Respondent's "First Amended Answer" S.C.B.D. No. 4687 (April 1, 2002) at p. 7.

18. Rule 6.1 of the Rules Governing Disciplinary Proceedings states that a formal complaint is brought "by direction of the Professional Responsibility Commission," the complaint is prepared by the General Counsel for the Bar Association, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and then filed with the Chief Justice of the Supreme Court. See Rule 6.1 at note 2 *supra*.

Rule 6.1 does not provide authority for formal complaints of unprofessional misconduct being initiated and filed with the Supreme Court using a procedural mechanism outside the scope of the Disciplinary Rules. *No Rule 6.1 formal complaint against lawyer G.B. was involved in this proceeding.*

the Oklahoma Bar Association having failed, neglected or refused for over 10–years to provide Respondent Mothershed a ... [speedy and certain remedy for every wrong as guaranteed by Art. 2, § 6 of the Oklahoma Constitution.]" [19]

¶ 15 On April 17, 2002, Respondent filed in this Court an application to assume original jurisdiction and he requested a "writ in the nature of mandamus/prohibition." Respondent argued that he had been denied a speedy trial contrary to the requirements of the Fifth and Fourteenth Amendments to the United States Constitution, and that the scheduling of the Trial Panel hearing caused "a complete lack of subject matter jurisdiction." [20] He argued that Rule 6.7 was a requirement for the exercise of subject matter jurisdiction by the trial panel, and that the disciplinary proceeding should be dismissed with prejudice. Respondent did not raise the issue of personal jurisdiction or issuance of summons.

¶ 16 On April 22, 2002, Respondent filed a motion to have the allegations of his cross-complaint deemed admitted because lawyer G.B. had not entered an appearance in Respondent's disciplinary proceeding and contested Respondent's allegations. On April 26, 2002, Respondent filed a motion for a separate trial on his cross-complaint and counter-complaint, and for issuance of an order requiring the Bar Association and lawyer G.B. to show cause why a default judgment should not be entered against them. On May 3, 2002, the Bar Association responded to the motion for separate trials.

■ ¶ 17 On May 10, 2002, Respondent's prerogative writ proceeding was pending in this Court, and the Bar Association filed a motion to strike the hearing date for the trial panel. The motion was based upon Respondent's assertions in the writ proceeding that if this Court did not give him the relief he sought his next procedural step would be seeking review with the U.S. Supreme Court. On May 13, 2002, the Court assumed original jurisdiction and denied relief to Respondent.[21] On May 14, 2002, the Presiding Master of the Trial Panel held a pretrial conference, continued the date for the trial panel hearing until June 25, 2002, and directed the parties to seek clarification from this Court on the scope of relief denied by this Court's May 13th Order. On May 20, 2002, this Court issued an order stating that the Court's assumption of jurisdiction in the extraordinary writ proceeding "did not remove the authority or jurisdiction of the Professional Responsibility Tribunal, its Chief Master, the Trial Panel, or its presiding Master." [22]

¶ 18 On June 13, 2002, Respondent again sought an adjudication of his alleged *qui tam* claim against lawyer G.B. and his claim against the Oklahoma Bar Association. The Oklahoma Bar Association responded and stated that Respondent would have the opportunity to address "any collateral issues" before the Supreme Court upon conclusion of the trial panel proceedings.[23]

¶ 19 On June 25, 2002, the Presiding Master of the Trial Panel held a conference call with the parties, and one day later he issued a scheduling order that set deadlines for discovery, stipulations, trial briefs, a procedure and date for the exchange of witness and exhibit lists, deferred disposition of Respondent's motion in limine until pretrial conference on Sept. 17, 2002, and scheduled the hearing before the trial panel on September 23–24, 2002.

¶ 20 On August 12, 2002, the Clerk of this Court received from Respondent a proposed order which Respondent wanted the Clerk to

**19.** "Respondent's and Counter–Claimant's Reply ..." S.C.B.D. No. 4687 (April 17, 2002) at pp. 4–5.

**20.** *Mothershed v. State of Oklahoma, ex rel. Oklahoma Bar Ass'n,* Okla. Sup.Ct. No. 97,616, Application and Petition to Assume Original Jurisdiction (April 17, 2002) at pg. 1.

**21.** A summary order assuming jurisdiction and denying mandamus relief has no preclusive ef-

fect. *Miller Dollarhide, P.C. v. Tal,* 2006 OK 27, ¶ 13, 174 P.3d 559, 565.

**22.** Order of Supreme Court, Okla. Sup. Ct. No. 97,616 (May 20, 2002).

**23.** Complainant Oklahoma Bar Association's Response, S.C.B.D. No. 4687 (June 20, 2002) at p. 2.

file herein. Respondent's order made findings of fact and conclusions of law, required lawyer G.B. to be disbarred and to pay Respondent twelve million dollars ($12,000,000.00), included a public reprimand of then current General Counsel for the Bar Association, and included other relief that Respondent desired. This Court issued an Order stating that Respondent's proposed order had been received by the Clerk and was not accepted for filing.

¶ 21 On September 9, 2002, the Bar Association filed a motion to bar Respondent from calling witnesses or submitting exhibits. The Bar argued that Respondent had ignored the scheduling orders of March 14, 2002, and June 26, 2002, by failing to provide the Bar Association with a list of witnesses or exhibits that Respondent desired to use at the hearing.

¶ 22 On September 13, 2002, Respondent countered with a motion to dismiss the disciplinary proceeding based upon alleged prosecutorial misconduct of the Bar Association. He argued that he had not been provided sufficient notice of the evidence which the Bar intended to use at the hearing. The Bar responded that it had provided a witness and exhibit list April 19, 2002. The Bar also argued that, pursuant to the second scheduling order, it provided Respondent with a virtually identical list of witnesses and exhibits on July 8, 2002, and that Respondent ignored the requirement that objections to the list were to be made with five days of receiving the list. The Bar also argued that Respondent could not suffer any prejudice from receiving certain copies of exhibits from the Bar because they were Respondent's own work product or already possessed by Respondent.

¶ 23 The pretrial order of September 17, 2002, listed the witnesses and exhibits of the Bar Association, and it stated that Respondent would not call any witnesses or offer exhibits.[24] On September 17, 2002, the Presiding Master of the Bar Association denied Respondent's motion in limine and the motion to dismiss which was based upon allegations of prosecutorial misconduct. The Presiding Master also issued an order which found that Respondent had failed to provide a list of witnesses and exhibits, and was therefore barred from presenting exhibits or witnesses at the hearing. On September 19, 2002, Respondent filed a motion to disqualify the Presiding Master. Respondent alleged that counsel for the Bar Association conducted secretive ex parte telephone fax communications with the Presiding Master which denied Respondent due process of law.

¶ 24 The hearing before the trial panel commenced on September 23, 2002, and the trial panel first addressed the motion to disqualify the Presiding Master. The transcript of the hearing shows that Respondent's allegation was based upon the fact that in the pretrial conference on May 14, 2002, the Presiding Master directed counsel for the Bar to memorialize his scheduling order. Counsel thereafter sent that order with a cover letter by fax to the Presiding Master which showed a "Cc:George Mothershed." Both counsel for the Bar and the Presiding Master stated that they had no ex parte communications, and they expressed a desire to know what Respondent was relying upon in his motion to disqualify. Respondent did not offer any instances of improper ex parte communications, and the Presiding Master denied Respondent's motion to disqualify him.

¶ 25 The transcript of Respondent's hearing includes testimony and argument of the Respondent giving his views on when a summons is, and is not, necessary for a lawyer disciplinary proceeding. Respondent offered an opinion that the Arizona Bar Association was required to serve its complaint against him with a summons because he was not a

---

24. While being questioned by the Presiding Master of the trial panel at his disciplinary hearing, Respondent agreed that during a pretrial telephone conference Respondent had stated that he did not have any witnesses to call and he had no exhibits to submit at his disciplinary hearing. Transcript of Hearing, Vol. 2 at p. 294. The Presiding Master nevertheless allowed Respondent to submit an exhibit at the hearing because he wanted "to give Mr. Mothershed the benefit of handing that into evidence." *Id.* at pg. 295. The Presiding Master also asked Respondent if he had any witnesses that he wanted to testify on Respondent's behalf, and upon receiving a negative reply determined that Respondent had rested his case. *Id.*

member of that Association. O.R. Trans. Vol. 2, at p. 313. Additionally, Respondent explained that in Oklahoma when a person becomes a member of "this Bar," "you stipulate that you cannot object to jurisdiction of the court with regard to complaints." *Id.* In his closing argument before the Trial Panel, Respondent objected to the jurisdiction of the trial panel based upon the hearing date being rescheduled, but made no claim relating to personal jurisdiction or issuance of a summons. *Id.* at pp. 326–332. Both parties rested and the matter was submitted to the trial panel for its report to be submitted to this Court.

¶ 26 Upon receipt of the Report of the Trial Panel, the Chief Justice of the Supreme Court issued an order setting the briefing schedule, the Bar Association filed its brief, and Respondent failed to file his brief. This Court reviewed the trial panel report, evidence, pleadings, submitted brief, considered Respondent's prior professional discipline,[25] and issued an opinion that disbarred Respondent.

### III. Respondent's Allegations and the Petition to Vacate

¶ 27 In December 2010 Respondent filed a petition to vacate and sought to vacate all of the disciplinary proceedings herein, including this Court's opinion disbarring him in 2003.[26] His seventy-eight page petition claims that the disciplinary proceedings occurred without personal jurisdiction. His argument centers on the concept that personal jurisdiction requires a summons and a return to be of record in a proceeding. He also claims that the trial panel lacked subject matter jurisdiction because his trial panel hearing did not occur within the sixty days required by Rule 6.7 of the Rules Governing Disciplinary Proceedings. He argues that Rule 6.7 created a

"Due Process Property Right" to which he was entitled. He argues that opinions of this Court have held that certain time limits in the procedure for disciplinary proceedings are not jurisdictional, and that such holdings make the disciplinary procedure "void for vagueness," and that all of Oklahoma's lawyer disciplinary proceedings are void. He argues that he was denied equal protection under the law as guaranteed by the Fourteenth Amendment to the U.S. Constitution because (1) Rule 6.4 "prevents challenges to the jurisdiction over the accused, the proceeding, the claims, etc., in Oklahoma attorney disciplinary proceedings," (2) that the Code of Civil Procedure in civil cases is not allowed to be followed in its entirety in disciplinary proceedings, and (3) a strict rule of procedure such as the sixty-day requirements of Rule 6.7 may not be "relaxed." Respondent seeks as additional relief an order expunging all records of his disciplinary proceedings and to be reinstated on the Oklahoma Roll of Attorneys.[27]

¶ 28 Respondent also argues that his Cross–Complaint against G.B. and his Counter–Complaint against the Oklahoma Bar Association were unadjudicated in his former disciplinary proceeding and that they should be revived by an order *nunc pro tunc.* He argues that G.B. and the Oklahoma Bar Association did not dispute his allegations in his disciplinary proceeding, and he concludes that they are estopped from denying the merits of his claims.

¶ 29 On April 22, 2011, Respondent filed a "Notice of Reservation Federal Claims, Issues, Rights, Questions, and Defenses" wherein he states that he does not desire this Court to determine his "federal claims and issues" which he reserves for subsequent federal court litigation. He states that he wants

---

25. *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 1991 OK 36, 812 P.2d 382.

26. Respondent argues that after April 8, 2002, "all orders and the opinion are facially invalid" and "void." Respondent's "Petition to Vacate and Motion for Order Nu[n]c Pro Tunc With Affidavit," S.C.B.D. No. 4687, at p. 19. (Dec. 2, 2010). Similar statements occur throughout Respondent's petition. *See, e.g.,* at pp. 35, 41.

27. Respondent states that 22 O.S. §§ 18, 19, federal law, and the Court's inherent authority provide sufficient authority for expunging his records. Respondent does not cite our recent opinion, *In re Spilman,* 2010 OK 70, 240 P.3d 702, where we explained that 22 O.S. §§ 18, 19, did not provide authority for expunging Bar disciplinary proceedings in this Court. Due to the nature of our disposition on the petition to vacate we need not address Respondent's authority relating to the Court expunging records.

the Court to address only certain issues which he defines as issues of state law. He defines those issues with numbered paragraphs which appear to be incomplete.[28] The issues he does identify are (1) whether personal jurisdiction was obtained of him in the disciplinary proceeding, (2) whether Rule 6.7 deprived the trial panel of subject matter jurisdiction, (3) whether Rule 6.7 created a "due process property right" to have his disciplinary hearing at a certain time before the trial panel, (4) whether this Court's construction of Rule 6.7 is "void for vagueness," (5) whether this Court's construction of Rule 6.7 denies Respondent his rights guaranteed by Article 2 § 6 of the Oklahoma Constitution, (6) his renewed request for a judgment in the amount of twelve million dollars against G.B., and (7) whether all of his disciplinary records should be expunged.

### IV. Bar Association's Response and Petitioner's Reply

¶ 30 The Bar Association responded to Respondent's petition to vacate, and argued that (1) Respondent made the same arguments in his disciplinary proceeding and its contemporaneous extraordinary writ proceeding, (2) Respondent did not file a petition for rehearing in his Bar disciplinary proceeding, (3) the Rules of this Court and the Rules Governing Disciplinary Proceedings do not provide a procedure for vacating a disbarment almost eight years after it is a final adjudication, (4) Respondent made similar claims before other courts after his disbarment, and (5) this Court should find that Respondent's filings are frivolous and dismiss

his petition to vacate. The exhibits attached to the response include a photocopy of this Court's opinion disbarring Respondent as well as photocopies of an appellate opinion and orders issued by other courts.

¶ 31 Respondent filed a reply to the Bar Association's response. Respondent argues that the Bar Association's Response "set forth no admissible evidence or relevant applicable law." Respondent argues that his filings show "a prima facie case," and that "they are to be deemed confessed by the Oklahoma Bar Association."

### V. Respondent's Collateral Attack

¶ 32 The Bar Association argues that no remedy to vacate a disbarment is provided by the Rules Governing Disciplinary Proceedings or the Rules of this Court, and that such omission is sufficient to deny Respondent relief. The unavailability of a rule-created remedy for vacating a Bar disciplinary proceeding is not dispositive of Respondent's allegations.

■ ¶ 33 This Court has explained that "[t]he regulation of licensure, ethics, and discipline of legal practitioners is a nondelegable, constitutional responsibility solely vested in this Court in the exercise of our exclusive jurisdiction." [29] Our nondelegable and exclusive jurisdiction in Bar matters has been stated often by this Court,[30] and it includes *every adjudicative aspect* of a disciplinary inquiry involving the authority of the Oklahoma Bar Association.[31] This Court's subject matter jurisdiction in lawyer disciplinary proceedings is both *original and exclusive.*[32]

---

**28.** Respondent's filing in this Court, "Notice of Reservation Federal Claims, Issues, Rights, Questions, and Defenses," is a document of twelve pages with what appears to be a missing page. In the original document and all photocopies filed in this Court page number "–6–" appears to be missing. Respondent numbered paragraphs "1" and "2" on page "–5–" are followed by numbered paragraphs "6," "7," and "8" of the following page numbered "–7–" by Respondent.

**29.** *State ex rel. Oklahoma Bar Ass'n v. Wilburn,* 2010 OK 25, ¶ 4, 236 P.3d 79, 80.

**30.** *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Albert,* 2007 OK 31, ¶ 11, 163 P.3d 527, 533; *In*

*re Reinstatement of Fraley,* 2005 OK 39, ¶ 36, 115 P.3d 842, 852; *Tweedy v. Oklahoma Bar Ass'n,* 1981 OK 12, 624 P.2d 1049, 1052; *In re Integration of State Bar of Oklahoma,* 1939 OK 378, 185 Okla. 505, 95 P.2d 113, 116. *See also* 12 O.S.2001 Ch. 15, App. 1, Okla. Sup. Ct. R. 1.17 (Court notes its role in adjudicating Bar disciplinary proceedings and states therein that "[t]he law vests in the Supreme Court alone" this function.).

**31.** *State ex rel. Oklahoma Bar Ass'n v. Livshee,* 1994 OK 12, 870 P.2d 770, 773.

**32.** *State ex rel. Oklahoma Bar Ass'n v. Erickson,* 2001 OK 66, ¶ 14, 29 P.3d 550, 555. *See also State ex rel. Oklahoma Bar Ass'n v. Wallace,* 1998

This Court is the *only* court that possesses *original* jurisdiction of a proceeding which attacks a lawyer's disbarment issued by this Court.

■ ¶ 34 We have explained that initial judicial cognizance of a matter is not based upon the availability of a particular remedy or form of action, but whether an alleged circumstance is a particular "wrong" or a cause of action recognized by law; *i.e.*, judicial cognizance is based upon a justiciable cause of action.[33] Disbarment as a result of a disciplinary proceeding is a form of deprivation requiring due process of law during that proceeding,[34] and due process is not afforded when a court lacks personal and subject matter jurisdiction.[35] However, merely concluding that a respondent in a disciplinary proceeding should have a remedy to challenge this Court's jurisdiction when subject to disbarment does not answer the question if Respondent's remedy was during his Bar disciplinary hearing or if he possesses a remedy to attack that proceeding eight years after adjudication of his professional misconduct.

■ ¶ 35 A respondent in a disciplinary proceeding has opportunities to raise defenses by answer (or as in this case by amended answer), to present defenses to the trial panel for the purpose of making a record of facts necessary to support those defenses, and to raise legal issues of any defense by a brief in this Court *prior to this Court's adjudication* of the claims made by the Bar and defenses raised by a respondent. We also note that after this Court issues an opinion imposing discipline a respondent may file a petition for rehearing challenging that opinion.[36] Further, we explain herein that Respondent's argument concerning a delay in the trial panel proceedings is the type of claim which the Court has considered when mitigating discipline and determining the effective date of discipline. This type of claim should be resolved during the adjudicatory stage of the disciplinary process with a respondent making a record before the trial panel and submitting legal argument to this Court when it determines the proper discipline. The statutory procedure for vacating judgments in a District Court, 12 O.S.2001 §§ 1031–1038, inclusive, involves claims based upon fact, law, or mixed questions of law and fact, and if applicable in a Bar disciplinary proceeding would require additional trial panel proceedings and subsequent review by this Court. The disciplinary procedure provides an adequate opportunity for a lawyer to raise defenses and challenge the Court's final adjudication therein. Because this Court has not unequivocally addressed the issue whether a respondent may file a post-opinion petition to vacate, we decline to hold that Respondent's sole opportunity for a remedy was during his disciplinary proceeding.[37] We hold *prospec-*

OK 65, ¶ 6, 961 P.2d 818, 822 ("In a bar disciplinary proceeding this court functions in the role of an adjudicative licensing authority that exercises exclusive original cognizance."); 5 O.S. 2001 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 1.1 ("This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any all persons licensed top practice law in Oklahoma,....").

33. *Ethics Commission v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1072–1073. *See also Rivas v. Parkland Manor,* 2000 OK 68, ¶ 18, 12 P.3d 452, 457–458 (this Court has held that the right to a remedy afforded by Okla. Const. Art. 2, § 6, means that the courts should be open and afford a remedy *for those wrongs that are recognized by the law of the land.*); *State ex rel. Oklahoma Bar Ass'n v. Maddox,* 2006 OK 95, ¶ 15, 152 P.3d 204, 209–210 (Okla. Const. Art. 2, § 6 is applicable to a Bar disciplinary proceeding).

34. *State ex rel. Oklahoma Bar Ass'n v. Lobaugh,* 1988 OK 144, 781 P.2d 806, 811.

35. *Producers Investment Co. v. Colvert,* 1940 OK 175, 100 P.2d 1005, 1009, quoting *Seal et al. v. Banes et al.,* 1934 OK 299, 35 P.2d 704, 705 ("No judgment of a court is due process of law, if rendered without jurisdiction in the court or without notice to the party.").

36. Rule 6.15(c) of the Rules Governing Disciplinary Proceedings states that petitions for rehearing on behalf of the respondent or the Association shall be filed with the Clerk of the Supreme Court within twenty (20) days from the date of mailing of the action or decision of the Supreme Court.

37. When called upon to construe the meaning of not-so-readily intelligible or not-so-clearly settled legal norms that are a veritable trap for the unwary, this Court will ameliorate the effect of its decision to provide evenhanded fairness. *Ar-*

*tively* from the date this opinion is filed with the Clerk of this Court that the procedure for vacating a judgment in a District Court, 12 O.S.2001 §§ 1031–1038, inclusive, is not applicable to a Bar disciplinary proceeding in this Court.

■ ¶ 36 Respondent's disbarment is a final adjudication. In his disbarment proceeding Respondent did not file a petition for rehearing and the Court did not order an *immediate* implementation of discipline. Respondent's disbarment was thus an effective and final adjudication twenty days after the date the Court's decision was mailed to the parties.[38] The decision was mailed to the parties on March 18, 2003, and Respondent's disbarment was final in 2003.

■ ¶ 37 A challenge to a final adjudication may be classified as either direct or collateral.[39] Respondent characterizes his request as raising a jurisdictional infirmity that is apparent from a facial inspection of the trial tribunal's proceedings, and that "its

decision may be collaterally attacked and set aside upon the request of either party at any time."[40] We accordingly treat the petition to vacate as invoking the *remedy* he requests, a collateral attack upon a final adjudication, and *we assume for the purpose of this opinion* that he has a remedy to collaterally attack a Bar discipline adjudication on the basis of allegations that such occurred without personal and subject matter jurisdiction.

## VI. Personal Jurisdiction

¶ 38 A lawyer is initially notified of a grievance or allegation against that lawyer pursuant to Rule 5.2 of the Rules Governing Disciplinary proceedings,[41] and the Court has explained that this notice must be accomplished by personal delivery or by certified mail.[42] In his disciplinary proceedings Respondent made no complaint or objection relating to his Rule 5.2 notice. Subsequent to the Rule 5.2 notice, formal proceedings may be initiated with a formal complaint

row *Trucking Co. v. Lewis,* 2004 OK 18, ¶ 7, 90 P.3d 997, 999–1000; *Sisk v. J.B. Hunt Transport, Inc.,* 2003 OK 69, n. 27, ¶ 14, 81 P.3d 55, 61. We decline to hold that Respondent's opportunity for a remedy was limited to the time of his disciplinary hearing when the legal norm for such remedies was not clearly settled at that time.

38. *State ex rel. Oklahoma Bar Ass'n v. Giger,* 2003 OK 61, ¶¶ 15–17, 72 P.3d 27, 34–35.

39. A direct attack is an attempt to avoid or correct a judicial proceeding in some manner provided by law, such as by an appeal, or motion for new trial. *House v. Town of Dickson,* 2007 OK 57, n. 5, 193 P.3d 964; *In re Hess' Estate,* 1962 OK 74, 379 P.2d 851, 855, *appeal dismissed, cert. denied, Hess v. Kriz,* 375 U.S. 45, 84 S.Ct. 157, 11 L.Ed.2d 108 (1963).

A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law; that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial. *In re Hyde,* 2011 OK 31, ¶ 11, 255 P.3d 411, 414, quoting *State ex rel. Comm'rs of Land Office v. Corp. Comm'n,* 1979 OK 16, ¶ 9, 590 P.2d 674, 677.

40. Respondent's "Petition to Vacate and Motion for Order Nu[n]c Pro Tunc With Affidavit," S.C.B.D. No. 4687, at pp. 11, 18. (Dec. 2, 2010).

41. 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 5.2:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

42. *State ex rel. Oklahoma Bar Ass'n v. O'Neal,* 1993 OK 61, 852 P.2d 713, 716.

filed with the Supreme Court. Rule 6.1, Rules Governing Disciplinary Proceedings.

¶ 39 In Respondent's petition to vacate he argues that he was not served with a summons accompanying the service of the formal complaint, and that the record of the proceeding thus fails to show that the Court had personal jurisdiction of him during the proceedings. He states the following.

On February 15, 2002, Mothershed initially in a motion to dismiss for want of personal service, raised the lack of the Court's personal jurisdiction over him. Exhibit A[.] Consequently, the issue of Mothershed's right [to] 14th Amendment due process jurisdiction has not been waived.

Respondent's Petition to Vacate, at pp. 23–24.

Exhibit "A" attached to his petition to vacate is the "Notice of Selection and Appointment of Trial Panel and Notice of Setting and Notice of Hearing" filed February 15, 2002. This document appoints the three members of the trial panel, sets a hearing date, and states that motions for continuance "should be addressed to the Presiding Master [of the trial panel] appointed above." This document does not support Respondent's statement that he made an objection based upon personal jurisdiction. *None* of the exhibits attached to the petition to vacate show that Respondent made an objection to personal jurisdiction or service of process during his disciplinary proceeding.[43]

¶ 40 On February 15, 2002, Mothershed did file a "Respondent's Motion to Dismiss" and a "Memorandum in Support of Respondent's Motion to Dismiss." The Motion begins with the statement that "Respondent moves this Court for an order dismissing this action on grounds there is a lack of subject matter jurisdiction on the following grounds...." The motion does *not* contain the phrases "personal jurisdiction," "service of process," "*in personam* jurisdiction" or

the words "personal," "process," "service," "summons," or any other phrase or word indicating a challenge to personal jurisdiction. The supporting "Memorandum" argues that a United States Bankruptcy Court has subject matter jurisdiction relating to Respondent's professional conduct before a Bankruptcy Court. The Memorandum contains no argument referencing "personal jurisdiction," "*in personam* jurisdiction," "process," "service," "summons," or any other word or phrase indicating a challenge based upon personal jurisdiction. We find that this motion does not contain a challenge to personal jurisdiction.

¶ 41 Respondent filed an Answer on February 15, 2002. His answer did not raise any issue relating to personal jurisdiction or issuance of summons. On April 1, 2002, Respondent filed an Amended Answer to the Complaint and Amended Complaint. Therein he did not raise or preserve the issues of personal jurisdiction, manner of service, or issuance of summons. Two orders were filed as a result of a telephone conference call in March 2002, one of which stated arguments of the parties and does not contain any objection by Respondent based upon personal jurisdiction. The pretrial order in September 2002 overruled Respondent's motion to dismiss which was based upon allegations of prosecutorial misconduct. Again, no objection to personal jurisdiction was raised or preserved.

¶ 42 No objection relating to personal jurisdiction or issuance of summons appears on the face of the record until Respondent's petition to vacate filed in December 2010, more than eight years after his disbarment. In our summary of the proceedings herein we noted Respondent's testimony at his disciplinary hearing which gave his opinion that issuance of a summons was not necessary for his Oklahoma disciplinary proceeding. He participated in the trial panel hearing, testi-

---

**43.** All of Respondent's Exhibits attached to his petition to vacate were examined: Exhibit A (photocopy of Notice of Selection and Appointment of Trial Panel, etc., February 7, 2002, S.C.B.D. No. 4687); Exhibit B (photocopy of Supreme Court Clerk's docket entries, S.C.B.D. No. 4687), Exhibit C (photocopy of First Modified Scheduling Order, June 26, 2002, S.C.B.D.

4687, followed by an "Affidavit of George L. Mothershed's In Support of his Petition in Independent Action"). Additionally, all of Respondent's motions to dismiss, answer, amended answer, and all other filings of Respondent in S.C.B.D. 4687 were examined and none contain an objection to personal jurisdiction or any attempt to preserve the issue.

fied, submitted an exhibit (Respondent's Exhibit No. 1), and rested his case without raising an objection to either personal jurisdiction or issuance of a summons. When his answer and amended answer were before this Court during the post-hearing review, he did not file a brief addressing personal jurisdiction. The record of his disciplinary proceeding clearly shows his participation without making an objection to personal jurisdiction.

■ ¶ 43 Participation in a trial without preserving an objection to personal jurisdiction is usually construed as a general appearance and a waiver of any objection to personal jurisdiction.[44] In a Bar disciplinary proceeding in this Court where the Bar's complaint may not be challenged by demurrer or motion, a respondent's answer to the Bar's formal complaint is the first responsive pleading and a respondent must raise defenses, including any objection to personal jurisdiction or service of process. If the defense or objection is not made at that time then it is waived.[45] This requirement is consistent with our Pleading Code.[46]

¶ 44 Because Respondent participated in his Bar disciplinary proceeding without making an objection to personal jurisdiction or the method of process used to procure his participation, we need not discuss in this collateral attack the general nature of legal process or the sufficiency of the specific process used to require Respondent's personal participation in his disciplinary proceeding.[47] Respondent's allegations that this Court lacked personal jurisdiction necessary to impose professional discipline upon him and that such is shown on the face of the record are allegations without *any* support in the record and they are without legal merit.

## VII. Jurisdiction, Due Process, and Rule 6.7

■ ¶ 45 Respondent argues that the trial panel and this Court in his 2002 disciplinary proceeding lacked subject matter jurisdiction. He argues that Rule 6.7 of the Rules Governing Disciplinary Proceedings was violated, and that a violation of that Rule is also a violation of a personal right which he possesses, a violation of due process, and a jurisdictional error. The rule states that the trial panel hearing "shall not be less than thirty (30) nor more than sixty (60) days from the date of appointment of the Trial Panel." Rule 6.7 also provides that "[e]xtensions of this period may be granted by the Chief Master (or Vice–Chief Master, in the

---

44. *Smith v. Smith*, 1924 OK 224, 223 P. 658, 659. *See also Cherokee Nation v. Nomura*, 2007 OK 40, ¶ 7, 160 P.3d 967, 971 ("When a party makes an appearance and requests affirmative relief, he has waived any challenge to personal jurisdiction."); *Turner v. Big Four Petroleum Co.*, 1954 OK 244, 274 P.2d 524, 526–527 (if a defendant makes a general appearance in an action without properly objecting to personal jurisdiction, the defendant waives any lack of personal jurisdiction), *citing Summers v. Williams*, 1952 OK 91, 242 P.2d 139, overruled in part on other grounds in *Zarrow v. Hughes*, 1955 OK 44, 282 P.2d 215.

45. 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.4:

The Respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

46. 2 O.S.2001 § 2012(F)(1):

F. WAIVER OR PRESERVATION OF CERTAIN DEFENSES.

1. A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, or lack of capacity of a party to be sued is waived:

a. if omitted from a motion that raises any of the defenses or objections which this section permits to be raised by motion, or

b. if it is not made by motion and it is not included in a responsive pleading or an amendment thereof permitted by subsection A of Section 2015 of this title to be made as a matter of course. A motion to strike an insufficient defense is waived if not raised as in subsection D of this section.

47. *But see, First Nat. Bank & Trust Co. v. Arles*, 1991 OK 78, 816 P.2d 537, 541 (Legal process includes proceedings begun by a writ, warrant, summons, or order, or which invoke the aid of judicial process.); *State ex rel. Whitson, v. Bd. of Com'rs of Ellis County*, 1917 OK 331, 166 P. 423 (personal jurisdiction in a mandamus proceeding does not require issuance of a summons since alternative writ may take the place of petition and summons in a mandamus proceeding).

case of the unavailability of the Chief Master) for good cause shown."

¶ 46 Respondent states that his hearing occurred after April 8, 2002, and he argues that the disciplinary proceedings after that date are void. Respondent states that the continuances were not granted by either the Chief Master or Vice–Chief Master of the Professional Responsibility Tribunal upon good cause shown, but by the Presiding Master of Respondent's trial panel. The order signed by the Chief Master of the Professional Responsibility Tribunal which appointed Respondent's trial panel *also expressly ordered requests for a continuance to "be addressed to the Presiding Master" of Respondent's trial panel.* The Presiding Master thereafter ruled on requests for a continuance.

¶ 47 Subject matter jurisdiction of a court is invoked by pleadings filed with a court which show that the court has power to proceed in a case of the character presented, or power to grant the relief sought.[48] Subject matter jurisdiction in this Court relating to Respondent's disciplinary proceeding occurred when his disciplinary proceeding was commenced in this Court by the Bar Association filing a formal complaint pursuant to Rule 6.1 of the Rules Governing Disciplinary proceedings.

¶ 48 Contested jurisdictional facts must be adjudicated by the proper finder of fact for the proceeding.[49] The findings of fact and conclusions of law made by the trial panel of the Professional Responsibility Tribunal are not binding on this Court, and *this Court adjudicates* both the facts and law in a lawyer disciplinary proceeding.[50] This Court, and not the trial panel, adjudicates issues of fact and issues of law that are binding in a disciplinary hearing.

¶ 49 Whether a particular party must plead and prove a jurisdictional fact will depend upon whether the fact is part of a cause of action or part of a defense.[51] Respondent's argument that a loss of subject matter jurisdiction occurred by a violation of Rule 6.7 is in the nature of a defense and he had the burden to present those facts with supporting legal argument to this Court for adjudication. The Respondent's filings in his disciplinary proceeding show that he was aware of this Court's *de novo* review of the record.[52] However, he declined to file a brief in this Court and raise as error the timeliness of the trial panel hearing and the method by which continuances were obtained by the Bar in his case.[53]

**48.** *Oklahoma Dept. of Securities ex rel. Faught v. Blair,* 2010 OK 16, ¶ 19, 231 P.3d 645, 657–658; *State ex rel. Oklahoma Tax Com'n v. Texaco Exploration,* 2005 OK 52, ¶ 14, 131 P.3d 705, 709; *State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck,* 1988 OK 38, ¶ 10, 753 P.2d 1356, 1359.

**49.** *Colton v. Huntleigh USA Corp.,* 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073; *Flick v. Crouch,* 1967 OK 131, 434 P.2d 256, 261–262.

**50.** *State ex rel. Oklahoma Bar Ass'n v. Vincent,* 2002 OK 40, ¶ 22, 48 P.3d 797, 801 ("The Tribunal's findings, conclusions of law, or recommendations of discipline are not binding on this Court."); *State ex rel. Oklahoma Bar Ass'n v. Dershem,* 1999 OK 77, ¶ 22, 990 P.2d 864, 868 ("The Supreme Court's review is *de novo,* the tribunal's findings and conclusions of law, as well as any recommendations for discipline are not binding on the Court."); *State ex rel. Oklahoma Bar Ass'n v. Weeks,* ¶ 12, 969 P.2d 347, 351 ("Neither the parties' stipulation of fact nor the Tribunal's findings, conclusions of law nor recommendations of discipline are binding on this Court."); *State ex rel. Oklahoma Bar Ass'n v. Todd,* 1992 OK 81, 833 P.2d 260, 262 ("neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and recommendations of a PRT are merely advisory").

**51.** *Colton v. Huntleigh USA Corp.,* 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073; *Flick v. Crouch,* 1967 OK 131, 434 P.2d 256, 261–262.

**52.** For example, in "Respondent's Supplement to Motion to Dismiss" filed March 11, 2002, he stated that a dismissal of the complaint "will permit the Supreme Court a 'full scale non-deferential de novo examination of al relevant facts.'" Respondent's Supplement, at p. 7.

**53.** We note that Respondent placed no facts of record in his disciplinary proceeding concerning whether this alleged violation of Rule 6.7 by a Presiding Master granting a continuance instead of the Chief Master or Vice–Chief Master is anything more than a one-time or single occurrence. Our review herein on Respondent's petition to vacate is limited to the face of the record before us.

¶ 50 Respondent's arguments are based upon the idea that he raised a "subject matter jurisdiction" challenge by his Amended Petition that went unadjudicated by this Court in his Bar disciplinary hearing after he failed to raise the argument in both the pretrial conference and by a brief in this Court after the trial panel hearing. Further, that because (1) subject matter jurisdiction was not expressly adjudicated by the Court's opinion, and (2) subject matter jurisdiction may not be waived by parties, his failure to brief the issue to this Court did not waive his claims and he is now entitled to his one attempt to show alleged jurisdictional flaws in the Bar proceeding.[54] Respondent's argument is premised upon the idea that the alleged error in application of Rule 6.7 shows a violation of due process, and thus an error of jurisdictional magnitude.

■ ¶ 51 This Court possesses *nondelegable and exclusive* jurisdiction in Bar matters. Subject matter jurisdiction is not delegated to a trial panel of the Professional Responsibility Tribunal. A trial panel does *not* function as a court of original jurisdiction and issue a decision for this Court's appellate review.[55] A trial panel functions as this Court's hearing examiner and a procedural "conduit" for the record and legal arguments making the case ready for this Court's original *de novo* review of the case.[56] The parties raise their claims and defenses in the pleadings and have an opportunity to present facts supporting those claims and defenses in a record; and that record is forwarded to this Court to consider with legal arguments made by the parties in their briefs.

¶ 52 Subject matter jurisdiction in this Court is invoked with the filing of the formal complaint by the Bar, and that jurisdiction remains with this Court throughout the trial panel proceedings. Although the Court created rules requiring parties to present their respective claims and defenses to a trial panel of the Professional Responsibility Tribunal, these rules merely create a method by which those claims and defenses are submitted to this Court for *this Court's original and exclusive adjudication.* Respondent's arguments which compare a trial panel's "jurisdiction" to that of a *court* of *original jurisdiction,* as well as his references to an "automatic appeal" from the trial panel to this court with the filing of "appellate briefs," are thus incorrect and not applicable.

¶ 53 Respondent relies upon *Ashikian v. State ex rel. Oklahoma Horse Racing Commission*[57] for the proposition that a Chief Master or Vice–Chief Master of the Professional Responsibility Tribunal does not have the "subject matter jurisdiction" or authority to confer upon a Presiding Master of a trial panel the power "to assert in-perpetuity jurisdiction over a pending case" by using a power to grant continuances for trial panel hearings. In *Ashikian,* the rule at issue was expressly stated to be jurisdictional and commenced with the language "[j]urisdiction of stewards to suspend or fine. . . ."[58] Rule 6.7 of the Rules Governing Disciplinary Proceedings does not contain any language indicating that jurisdiction is involved when a Chief Master grants a continuance. Further, even if we assumed that a Chief Master may not grant to a Presiding Master the authority to hear a request for a continuance, an erroneous application of the rule is not *ipso facto* an error of jurisdiction. The continuances granted in Respondent's disciplinary proceeding did not create a jurisdictional error, and we thus reject this argument of Respondent.

**54.** *Read v. Read,* 2001 OK 87, ¶¶ 14–15, 57 P.3d 561, 566–567 (The law affords no more than a single opportunity to litigate a disputed question of a tribunal's jurisdiction.); *Stites v. DUIT Constr. Co.,* 1995 OK 69, n. 13, 903 P.2d 293, 298 (A litigant who is deemed aggrieved by a jurisdictionally defective decision is allowed but a single "whack" at any facially void target.).

**55.** *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2000 OK 35, ¶ 4, 4 P.3d 1242, 1247.

**56.** *State ex rel. Oklahoma Bar Ass'n v. Busch,* 1998 OK 103, ¶¶ 12, 16, 976 P.2d 38, 44, 46. *See*

*also State ex rel. Oklahoma Bar Ass'n v. O'Neal,* 1993 OK 61, 852 P.2d 713, 716 (a party must present facts to the trial panel if the party desires the Court to use those facts when rendering its decision).

**57.** *Ashikian v. State ex rel. Oklahoma Horse Racing Commission,* 2008 OK 64, 188 P.3d 148.

**58.** *Ashikian,* 2008 OK 64, at n. 16, 188 P.3d 148, 153.

¶ 54 Generally, once subject matter jurisdiction is acquired it is not lost or divested by subsequent events.[59] Although Respondent states that his claim is based upon subject matter jurisdiction, it is *closer* to a claim based upon the third jurisdictional element, jurisdiction of a court to render the particular judgment.[60] Also generally, a court's violation of a procedure or a rule of procedure is not *usually* considered as also an act outside the jurisdiction of a court unless (1) the violation or performance of the

procedure is expressly stated to be jurisdictional,[61] (2) the procedure is itself for the purpose of obtaining or invoking jurisdiction,[62] or (3) the procedure is for the purpose of protecting a fundamental right.[63] Respondent's claims seek to place himself in this last category with his claim to a right of a speedy trial [64] that is allegedly created by Rule 6.7, and protected by the Due Process Clause of the 14th Amendment,[65] and the Due Process Clause of Okla. Const. Art. 2, § 7.[66] Respon-

**59.** *Amarex Inc. v. Sell,* 1977 OK 250, 566 P.2d 456, 459; *Jones Drilling Company v. Woodson,* 1973 OK 14, 509 P.2d 116, 118; *Turk v. Coryell,* 1966 OK 194, 419 P.2d 555, 558. The exceptions to this general rule are not before us in this proceeding and we need not list and analyze them.

**60.** In *Oklahoma Dept. of Securities ex rel. Faught v. Blair,* 2010 OK 16, n. 22, 231 P.3d 645, 658, we explained that the third element of jurisdiction, jurisdictional power to render the particular judgment, was raised by the arguments in the case which focused on whether the judgment sought or obtained violated mandatory law. *See, e.g., Gulfstream Petroleum Corp. v. Layden,* 1981 OK 56, 632 P.2d 376 (compulsory statutory requirement antecedent to judgment or final order must be fulfilled to satisfy third element of jurisdiction); *Abraham v. Homer,* 1924 OK 393, 102 Okla. 12, 226 P. 45, 48 (facts showing compliance with a procedural statute mandatorily required for a judgment are material to the existence of the power of the court to render that judgment). *See also Stidham v. Special Indem. Fund,* 2000 OK 33, n. 10, 10 P.3d 880, 884, quoting *Windsor v. McVeigh,* 93 U.S. (3 Otto) 274, 282, 23 L.Ed. 914 (1876) ("Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. *It must act judicially in all things, and cannot then transcend the power conferred by the law.*").

**61.** *See, e.g.,* 12 O.S.Supp.2007 § 696.2(D) ("The filing with the court clerk of a written judgment, decree or appealable order, prepared in conformance with Section 696.3 of this title and signed by the court, shall be a jurisdictional prerequisite to the commencement of an appeal...."); 30 O.S.Supp.2010 § 3–307 ("This article provides the exclusive jurisdictional basis for a court of this state to appoint a guardian or issue a protective order for an adult.").

**62.** *See, e.g., Woods v. Woods,* 1992 OK 64, 830 P.2d 1372, 1374 (The filing of the petition in error within thirty days of the judgment or order appealed is a jurisdictional prerequisite to the commencement of an appeal.); *Bane v. Anderson, Bryant & Co.,* 1989 OK 140, 786 P.2d

1230, 1233–1234 (Supreme Court's jurisdiction is invoked by a timely filed petition in error); 12 O.S.2001 § 990A (E) ("*Except for the filing of a petition in error* as provided herein, all steps in perfecting an appeal are not jurisdictional.") (emphasis added) (and as amended by Laws 2002, c. 468, § 6, eff. Nov. 1, 2002, and 2011 Okla. Sess. Law Serv. Ch. 13, S.B. 940).

**63.** *See, e.g., Shamblin v. Beasley,* 1998 OK 88, ¶ 12, 967 P.2d 1200, 1209 (notice and an opportunity to be heard is a fundamental right, a jurisdictional requirement, and an element of due process).

**64.** In Respondent's "Petition to Vacate and Motion for Order Nu[n]c Pro Tunc With Affidavit," S.C.B.D. No. 4687, at pp. 33–34 (Dec. 2, 2010) he argues that his trial panel hearing was required to held before April 8, 2002, and that he was denied a speedy trial when it occurred on September 23–24, 2002.

**65.** We construe Respondent's "Notice of Reservation Federal Claims, Issues, Rights, Questions, and Defenses" as an amendment to his Petition to Vacate. That amendment removes from his request for relief his claims based upon the U.S. Constitution *to the extent that such claims may be separated from his claims based upon State law.* Oklahoma's Due Process Clause, Okla. Const. Art. 2, § 7, has a definitional sweep that is coextensive with its federal counterpart, although there may be situations in which the Oklahoma provision affords greater due process protections than its federal counterpart. *McClure v. Conoco-Phillips Company,* 2006 OK 42, n. 54, 142 P.3d 390, 399; *Black v. Ball Janitorial Serv., Inc.,* 1986 OK 75, n. 9, 730 P.2d 510, 513.

**66.** *See, e.g.,* Respondent's "Petition to Vacate and Motion for Order Nu[n]c Pro Tunc With Affidavit," S.C.B.D. No. 4687, at p. 6, n. 9 (Dec. 2, 2010) (Respondent states that "Mothershed's Fourteenth Amendment due process property right entitlement to his attorney disciplinary trial was created by RGPD, Rule 6.7, and created expressly positive state court RGPD, Rule 6.7, and too it is created by the mandatorily required 'shall' consistent, positive action for government officials.").

dent also frames his arguments on two contentions: (1) that Rule 6.7 is mandatory and jurisdictional, and (2) that a deprivation of due process occurs when the mandatory language is not followed by the Bar when seeking a continuance.

■ ¶ 55 Even if we assume that Rule 6.7 was violated in Respondent's proceeding, not every violation of a procedural rule is equated with a denial of due process, and an alleged violation of a rule must result in a procedure which itself falls short of standards derived from the Due Process Clause for a violation of that Clause to occur.[67] For example, the denial of a continuance in a criminal trial has been held to not violate the Due Process Clause when the defendant received a fair trial.[68] In other words, did the assumed erroneous application of Rule 6.7 in granting continuances for Respondent's hearing result in a procedure which itself falls short of standards derived from the Due Process Clause?[69]

■ ¶ 56 In answering this question we note that a lawyer accused of misconduct in a Bar disciplinary proceeding must be afforded

due process of law prior to suspension or revocation of the lawyer's licence to practice law.[70] In a Bar disciplinary matter a respondent receives notice of the grievance, notice of the formal complaint, and opportunities for filing a written response and obtaining prehearing discovery as in civil cases.[71] A respondent may be represented by a lawyer.[72] A respondent has a public hearing before a Trial Panel and the hearing is stenographically recorded unless the facts are stipulated.[73] Witnesses may be compelled to attend the hearing and production of tangible evidence may be compelled by subpoena.[74] A respondent is not compelled to disclose matters which are privileged or answer questions that would tend to incriminate or show the respondent guilty of any act or offense that would be grounds for discipline.[75] The reception of evidence at the hearing before the Trial Panel is generally governed by the rules in civil proceedings.[76] At the hearing before the Trial Panel a respondent has an opportunity to testify, present testimony by witnesses, and produce tangible evidence.[77] The charge of disciplinary misconduct must be established by "clear and convincing evi-

**67.** *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir.2007); *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir.1985). *See also Stidham v. Special Indem. Fund*, 2000 OK 33, ¶ 10, 10 P.3d 880, 885 ("If a statute provides merely a rule of law to govern the subject matter with which it deals, failure to follow it strictly is but an error of law, not an act in the *absence of the court's power*.").

**68.** *Grotto v. Herbert*, 316 F.3d 198, 206–207 (2d Cir.2003) (discussing *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 [1964]).

**69.** Respondent's reliance upon *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) is misplaced. That Court explained that the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action *would be the equivalent of denying them an opportunity to be heard upon their claimed rights*. *Id.* 455 U.S. at 429–430, 102 S.Ct. 1148, citing *Boddie v. Connecticut*, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971). In Respondent's disciplinary proceeding the continuances of the hearing date granted Respondent and Bar an opportunity to be heard upon their claims and defenses.

**70.** *State ex rel. Oklahoma Bar Ass'n v. Whitebook*, 2010 OK 72, ¶ 21, 242 P.3d 517, 522; *State ex*

*rel. Okla. Bar Ass'n v. Seratt*, 2003 OK 22, ¶ 7, 66 P.3d 390, 392; *State ex rel. Oklahoma Bar Ass'n v. Minter*, 2001 OK 69, ¶ 23, 37 P.3d 763, 773; *State ex rel. Okl. Bar Ass'n v. Minter*, 1998 OK 59, ¶ 19, 961 P.2d 208, 213; *State ex rel. Oklahoma Bar Ass'n v. Eakin*, 1995 OK 106, 914 P.2d 644, 649; *State ex rel. Oklahoma Bar Ass'n v. Lobaugh*, 1988 OK 144, 781 P.2d 806, 810–811.

**71.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rules 5.2, 6.1, 6.2, 6.3, 6.4 and Rule 6.8.

**72.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.8, Rule 6.12(a).

**73.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.9, Rule 6.10.

**74.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.11(a), (b), (c).

**75.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.11(d).

**76.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.12(a).

**77.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.11, Rule 6.12.

dence."[78] The Trial Panel's report containing findings of fact and conclusions of law is served on a respondent.[79] The pleadings, exhibits, and transcript of the hearing are filed with the Supreme Court.[80] A respondent is provided an opportunity to file a brief with this Court using facts in the record and any legal issue respondent desires to argue.[81] This Court reviews the record, including briefs filed by the parties, and imposes discipline, or dismisses the proceedings, or takes other action it deems appropriate.[82] After issuance of the Court's opinion or order a respondent has an opportunity to file a petition for rehearing.[83] This procedure provides a respondent with an opportunity to appear, to present evidence and legal argument with review by the Oklahoma Supreme Court, and then a further opportunity to file a petition for rehearing and object to the Court's adjudication.

¶ 57 Respondent's hearing originally scheduled for March 19, 2002, occurred on September 23, 24, 2002. During this delay of six months Respondent still possessed his license to practice law in Oklahoma, although he was residing in Arizona. During these six months Respondent and the Bar filed motions, conducted discovery, participated in pretrial proceedings, and Respondent brought an original jurisdiction proceeding in this Court relating to his disciplinary proceeding. Respondent's disciplinary case was not languishing from neglect on the Bar docket. The record shows that all of the trial panel procedures, including notice and opportunity to appear, present a record, opportunity to testify and file briefs, etc., were provided to Respondent. Respondent received notice and a meaningful opportunity to appear and be heard. We conclude that the process received by Respondent was fair and no due process violation occurred.

¶ 58 In 1989, years prior to Respondent's Bar disciplinary proceeding, in *State ex rel. Oklahoma Bar Ass'n v. Brewer*, this Court construed Rule 6.7 and stated that a Chief Master or Vice–Chief Master may extend the time for a disciplinary hearing in order to comply with disciplinary procedures.[84] The record before us shows that continuances of Respondent's hearing were granted, in part, for completion of discovery which included depositions counsel for the Oklahoma Bar Association took in Arizona. Rule 6.8 of the Rules Governing Disciplinary Proceedings expressly allows for parties to take depositions. This Court has commented in various contexts on the important opportunity to engage in discovery so that a party may present a developed factual record to the trier of fact.[85] We also stated in *Brewer* that this Court has a long tradition of refusing to circumscribe lawyer disciplinary proceedings, including reinstatement proceedings, by procedural rulings.[86] Granting these continuances that delayed Respondent's hearing six months does not show an abuse of discretion amounting to an arbitrary and capricious use

**78.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.13.

**79.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.13.

**80.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.13.

**81.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.14.

**82.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.14.

**83.** 5 O.S.2001 Ch. 1, App. 1–A, Rules Governing Disciplinary Proceedings, Rule 6.14.

**84.** *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 1989 OK 172, n. 4, 794 P.2d 397, 399.

**85.** *See, e.g., Fanning v. Brown*, 2004 OK 7, ¶ 22, 85 P.3d 841, 848 ("Fanning must be afforded an opportunity to complete discovery so that the court will have a fully developed factual record to determine the issue."); *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, 913 P.2d 1318, 1320 (notice pleading is made possible by the liberal opportunity for discovery and other pretrial procedures to determine the relevant facts.)

**86.** *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 1989 OK 172, 794 P.2d 397, 399, citing *State ex rel. Oklahoma Bar Ass'n v. Samara*, 1984 OK 32, 683 P.2d 979, 983. *See also State ex rel. Oklahoma Bar Ass'n v. Minter*, 2001 OK 69, ¶ 12, 37 P.3d 763, 770 ("As long as the respondent receives a fair hearing and the record presents a clear and convincing evidence of the facts upon which the allegations rest, the trial panel's deviation from the rules governing the transmission of its conclusions—whether of fact or law—is harmless.").

of power,[87] but an effort by the Presiding Master to give the Bar an opportunity to obtain all material facts for presentation to the trial panel and then to this Court.

¶ 59 In 1987, in *State ex rel. Oklahoma Bar Ass'n v. Bradley*, the respondent therein argued that jurisdiction was lost when the trial panel report was filed with the Supreme Court approximately eighty days after the trial panel hearing instead of within the thirty-day requirement of Rule 6.13.[88] We stated therein the following.

> Although the rules provide guidelines for conducting disciplinary proceedings, failure to follow these to the letter would not divest this Court of jurisdiction. We find therefore that although we disapprove of such delay, the delay in and of itself did not divest this court of jurisdiction of this matter.

*Bradley*, 1987 OK 78, 746 at 1133, 746 P.2d 1130.

Well before Respondent's proceeding we had rejected the theory underlying his argument herein. We plainly stated that a failure to follow a procedural rule of the Rules Governing Disciplinary Proceedings does not necessarily inject a jurisdictional flaw into the proceeding.

■ ¶ 60 Respondent also seeks to divorce the language of Rule 6.7 from our opinions construing the Rules Governing Disciplinary Proceedings generally, and Rule 6.7 specifically. The U.S. Supreme Court has explained that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."[89] Similarly, this Court's judicial construction of a disciplinary procedure rule is an authoritative statement of what that rule meant several years before Respondent's Bar disciplinary hearing. That judicial construction stated that a rule in the Rules Governing Disciplinary Proceedings does not create a jurisdictional limitation on the trial panel or this Court. At the time of Respondent's disciplinary proceeding he could not possess any reasonable expectation that Rule 6.7 created a personal and unqualified right to a mandatory hearing within the 60–day limit specified therein.[90]

■ ¶ 61 We have stated that the Rules Governing Disciplinary Proceedings are generally not jurisdictional; *i.e.*, that the rules were not intended to create jurisdictional obligations. However, this does not mean that each rule of those Rules may never be considered as having a jurisdictional effect.[91] For example, an opportunity to be heard for the lawyer subject to discipline is an element of due process and thus a jurisdictional requirement for this Court to remove a lawyer's license to practice law.[92] Although the

---

**87.** *Flandermeyer v. Bonner*, 2006 OK 87, ¶ 10, 152 P.3d 195, 198–199 ("Before a party's due process rights are violated, it must be shown that the action or error was arbitrary, oppressive and shocking to the conscience of the court.").

**88.** *State ex rel. Oklahoma Bar Ass'n v. Bradley*, 1987 OK 78, 746 P.2d 1130, 1132.

**89.** *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

**90.** A liberty interest protected by the Due Process Clause may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), citing *Vitek v. Jones*, 445 U.S. 480, 493–494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) and *Wolff v. McDonnell*, 418 U.S. 539, 556–558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Argument of Respondent is without merit to the extent that it relies upon an expectation or interest created by state law (Rule 6.7) to establish a due process violation from an alleged erroneous grant of a continuance.

**91.** The fallacy of division occurs when one infers that an attribute of a "part" of a "whole" must necessarily exist because the "whole" has that same attribute. Irving M. Copi & Carl Cohen, *Introduction to Logic* 168–170 (11th ed. 2001); Harry J. Gensler, *Logic: Analyzing and Appraising Arguments* 337(1989). The fact that the Rules Governing Disciplinary Proceedings (the "whole") were not designed to create jurisdictional obligations does not answer the question whether a particular rule (a "part") of those Rules has a jurisdictional element.

**92.** *State ex rel. Bar Ass'n v. Combs*, 2007 OK 65, n. 48, 175 P.3d 340, 350 (The fundamentals of due process are applicable in lawyer disciplinary proceedings, including notice of the charges and an opportunity to defend against them.), citing

Rules Governing Disciplinary Proceedings provide for an opportunity to be heard, the jurisdictional nature of this requirement springs from the Oklahoma and federal Due Process Clauses and a lawyer's right in his or her license to practice law, and not the mere codification of that opportunity in the form of a rule by this Court.

¶ 62 Respondent argues that when every Bar disciplinary hearing pursuant to Rule 6.7 is not held within its sixty-day requirement or continued by the Chief Master, a violation of equal protection of the law occurs if this Court "relaxes" the meaning of "shall" as something other than a mandatory meaning. We construe this argument as Respondent arguing that the equal protection component of Okla. Const. Art. 2, § 7[93] is violated in such circumstances.[94] Respondent's argument is based upon the premise that this Court's judicial construction of the word "shall" must in every circumstance have a mandatory effect. While it is correct that "may" generally denotes permissive or discretional, and "shall" is ordinarily interpreted as implying a command or mandate, we have held that a directory rather than mandatory construction may be given to the word "shall" upon a finding of strongly persuasive contrary legislative intent.[95] This Court's holding that our intent in fashioning a rule governing the scheduling a trial panel hearing (and continuances to comply with the Rules Governing Disciplinary Procedure), was not to create a mandatory jurisdictional requirement is a holding within this Court's power to determine whether a state rule of procedure has directory or mandatory effect. This argument by Respondent is without merit.

¶ 63 Respondent raises a related argument that our judicial construction of Rule 6.7 is void on account of vagueness. A prohibition against a vague regulation is based upon the need to eliminate the impermissible risk of discriminatory enforcement of the regulation and suppressing (or denying) the exercise of a constitutionally protected right; i.e., there should be definiteness and certainty of expression in a regulation that suppresses or denies an individual right.[96] Respondent's argument is based upon his view that he possesses a personal right to a disciplinary hearing within a mandatory sixty-day limit, or as otherwise extended by the Chief Master. Our decisions have clearly construed the right to a timely hearing based upon the factors in a right-to-speedy-trial analysis and not upon a literal mechanistic application of Rule 6.7. Respondent's void-for-vagueness argument is without merit.

¶ 64 The right to a speedy and certain remedy without delay, in a civil proceeding, is one of the rights enjoyed by the citizens of this State, including lawyers in Bar disciplinary proceedings.[97] This right is recognized in Oklahoma Constitution Art. 2, § 6, which requires that a speedy and certain remedy be afforded for every wrong and for every injury to person, property, or reputation, and that right and justice be administered without sale, denial, delay or preju-

---

*State ex rel. Oklahoma Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 15, 914 P.2d 644.

**93.** Okla. Const. Art. 2, § 7: "No person shall be deprived of life, liberty, or property, without due process of law."

**94.** *Eastern Oklahoma Bldg. & Constr. Trades Council v. Pitts*, 2003 OK 113, ¶ 8, n. 2, 82 P.3d 1008, 1012 (While the Oklahoma Constitution can afford rights greater than those granted by the United States Constitution, we have explained that the same equal protection component found in the Fourteenth Amendment of the United States Constitution is present in the Due Process Clause of Okla. Const. Art. 2, § 7).

**95.** *Woods Development Co. v. Meurer Abstract*, 1985 OK 106, 712 P.2d 30, 33.

**96.** *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051, 111 S.Ct. 2720, 115 L.Ed.2d 888 (Part III of Court's Opinion); *Kolender v. Lawson*, 461 U.S. 352, 357–358, 361, 103 S.Ct. 1855, 1858–1859, 1860, 75 L.Ed.2d 903 (1983); *Smith v. Goguen*, 415 U.S. 566, 572–573, 94 S.Ct. 1242, 1246–1247, 39 L.Ed.2d 605 (1974). *See also Edmondson v. Pearce*, 2004 OK 23, ¶ 48, 91 P.3d 605, 629 (the void-for-vagueness doctrine requires a statute to define the limits on the constitutional right with sufficient definiteness that ordinary people understand what conduct is prohibited and in a manner that does not encourage arbitrary discriminatory enforcement.)

**97.** *Flandermeyer v. Bonner*, 2006 OK 87, ¶ 11, 152 P.3d 195, 199; *State ex rel. Oklahoma Bar Ass'n v. Maddox*, 2006 OK 95, ¶ 15, n. 11, 152 P.3d 204, 210.

dice.[98] In civil cases we have explained that four factors are considered whether this right has been infringed: the length of the delay, the reason for the delay, the party's assertion of the right, and the prejudice to the party occasioned by the delay.[99] In a Bar disciplinary matter we have commented on unreasonable delay and imposed less discipline where such a delay occurred; the effect of the delay was similar to a factor mitigating discipline.

¶ 65 In *State ex rel. Oklahoma Bar Ass'n v. Maddox,* we stated that "We would have agreed to the discipline imposed by the professional tribunal panel had this cause been presented in a timely and orderly manner." [100] In *Maddox* the trial panel, "apparently without considering the delay in these proceedings, recommended that Maddox be suspended for two years and one day and that he be assessed the costs of this proceeding." [101] In Oklahoma a recommendation for suspension *in excess* of two years "is tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred counterpart." [102] Instead of agreeing with a suspension that would have been "tantamount to disbarment," we imposed a two year suspension and we made the suspension retroactive for 21 months prior to our decision.[103]

¶ 66 The face of the record herein does not show any facts demonstrating prejudice to Respondent by the six-month delay.[104] The record does not show that Respondent's delay of six months was unreasonable. Respondent's claim of a lack of a speedy trial does not show a jurisdictional flaw on the face of the record. We conclude that Respondent's claim of a lack of a speedy trial due to the granting of the continuances is without merit.

## VIII. NO REMEDY BY DEMURRER OR MOTION TO DISMISS A BAR COMPLAINT

¶ 67 Respondent argues that Oklahoma and federal Due Process Clauses require a party to have a full and fair opportunity to litigate a claim, and that he did not have this opportunity because Rule 6.4 of the Rules Governing Disciplinary Proceedings prohibited him "from raising jurisdiction or U.S. Constitutional issues." [105] Respondent is mistaken as to what Rule 6.4 prohibits as well as in his view that he lacked an opportunity to present defenses and jurisdictional claims.

¶ 68 Rule 6.4 prohibits a respondent from challenging the formal complaint "by demurrer or motion." Rule 6.4 does not

---

**98.** *Flandermeyer v. Bonner,* 2006 OK 87 at ¶ 11, 152 P.3d at 199; *State ex rel. Oklahoma Bar Ass'n v. Maddox,* 2006 OK 95, at n. 11, 209–210, 152 P.3d 204.

**99.** *Flandermeyer v. Bonner,* 2006 OK 87 at ¶ 12, 152 P.3d at 199, explaining *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) and citing *Civil Service Commission of the City of Tulsa v. Gresham,* 1982 OK 125, ¶¶ 38–40, 653 P.2d 920.

**100.** *State ex rel. Oklahoma Bar Ass'n v. Maddox,* 2006 OK 95, ¶ 17, 152 P.3d 204, 210. *See also State ex rel. Oklahoma Bar Ass'n v. Lowe,* 1982 OK 20, 640 P.2d 1361, 1362 (discussion of *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), in the context of a Bar disciplinary proceeding.).

**101.** *Maddox,* 2006 OK 95, ¶ 5, 152 P.3d at 207.

**102.** *In re Reinstatement of Munson,* 2010 OK 27, ¶ 12, 236 P.3d 96, 101 ("A suspension from the practice of law for a period in excess of two years is tantamount to disbarment in that the suspended lawyer must follow the same proce-

dures for readmittance as would a disbarred counterpart.") *See also State ex rel. Oklahoma Bar Ass'n v. Hulett,* 2008 OK 38, ¶ 2, 183 P.3d 1014, 1015, citing *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* 2006 OK 23, n. 71, 136 P.3d 616, 630; Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A, Rule 11.1 & 11.4.

**103.** The Court's decision was filed December 2006 and the suspension was retroactive to March 2005 when respondent had voluntarily ceased to practice law. *Maddox,* 2006 OK 95 at ¶ 19, 152 P.3d at 211.

**104.** In 1982, well before Respondent's disciplinary proceeding, we explained that an objection to delay in the proceeding should be accompanied with a showing of some prejudice. *State ex rel. Oklahoma Bar Ass'n v. Lowe,* 1982 OK 20, 640 P.2d 1361, 1362.

**105.** Respondent's "Petition to Vacate and Motion for Order Nu[n]c Pro Tunc With Affidavit," S.C.B.D. No. 4687, at p. 27 (Dec. 2, 2010).

prohibit a respondent from raising jurisdictional and constitutional claims in an answer filed pursuant to Rule 6.4. An adjudication of the merits of a disciplinary claim against a lawyer also includes an examination of affirmative defenses raised by that lawyer during the course of the disciplinary proceeding.[106] This adjudication would include defenses of a jurisdictional or constitutional nature.

 ¶ 69 It is correct that this Court reviews the trial panel report, evidence submitted to the trial panel, stipulations, and pleadings filed in a disciplinary proceeding as well as a review of the merits of the disciplinary charges against a respondent even though he or she fails to file a brief in this Court.[107] However, this Court does not act to supply missing legal argument and authority necessary to support a respondent's defense when the Court reviews the allegations of unprofessional conduct.

¶ 70 This Court explained, *prior to Respondent's proceeding herein,* that a respondent in a disciplinary proceeding has an adversarial procedural burden [108] to present his or her defenses with the necessary supporting facts and legal arguments at the procedurally proper time before the procedurally proper tribunal. In *State ex rel. rel. Oklahoma Bar Ass'n v. Gasaway,* where a post-hearing brief was not filed by the respondent, we explained that a respondent was not denied procedural due process concerning an alleged error in the disciplinary proceeding when he did not avail himself of his opportunity to "submit legal arguments by brief in this court after the panel report was filed." [109] A Bar disciplinary proceeding is adversarial in nature, and a lawyer subject to discipline is provided with a fair and open hearing before a trial panel with notice and opportunity to present evidence and argument.[110] The adversarial nature of disciplinary proceedings is not a novel concept to Respondent.[111] The initial adversarial requirement that defenses be raised in a respondent's answer and not by demurrer or motion did not prevent Respondent from raising *any* defenses in his Answer or Amended Answer. Rule 6.4 does not prevent a respondent from both asserting and preserving defenses at the procedurally proper times during a disciplinary proceeding.

 ¶ 71 One of the goals of both the Federal Rules of Civil Procedure and the Oklahoma Pleading Code is to "eliminate unnecessary delay at the pleading stage by avoiding the time-consuming piecemeal litigation of pretrial motions." Okla. Stat. Ann. tit. 12, § 2012 (1993), (Committee Comment to Section 2012). Both the Federal Rules of Civil Procedure [112] and the Oklahoma Pleading Code [113] require a defendant to raise a defense in the responsive pleading if one is required, or by a motion prior to the responsive pleading. Some federal courts have explained that certain defenses that may be

**106.** *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 1993 OK 133, 863 P.2d 1189, 1192.

**107.** *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1995 OK 98, n.11, 904 P.2d 597, 601; *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 1993 OK 133, 863 P.2d 1189, 1192.

**108.** *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, 914 P.2d 644, 652 (In an adversarial proceeding a lawyer's function is to present proof to the end that the case may be decided according to law.)

**109.** *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 1993 OK 133, 863 P.2d 1189, 1200.

**110.** *State ex rel. Oklahoma Bar Ass'n v. Lobaugh,* 1988 OK 144, 781 P.2d 806, 811.

**111.** Respondent expressly relied upon the adversarial nature of professional disciplinary proceedings as a reason to support some of his arguments in his disciplinary proceeding. *See, e.g.,* "Respondent's Motion to Dismiss on Grounds of Prosecutorial Misconduct," No. S.C.B.D. 4687, Sept. 13, 2002.

**112.** Fed.R.Civ.P. 12(b): "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:...."

**113.** The first paragraph of 12 O.S.Supp.2004 § 2012(B) states that: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except the following defenses may at the option of the pleader be made by motion: ...."

waived by a defendant, such as the defense of lack of personal jurisdiction, must be both timely raised and seasonably and appropriately submitted to the trial court.[114] *Defendants are thus not denied due process when they are required to raise the personal jurisdiction defense by an answer and seasonable submission.* Similarly, a respondent in a Bar disciplinary matter is not denied due process protected by the Oklahoma Constitution when given the opportunity to submit the defense of a lack of personal jurisdiction as an affirmative defense in an answer to the formal complaint. Nothing prevented Respondent from raising the defense of a lack personal jurisdiction in his Answer.

■ ¶ 72 It is generally correct that a lack of subject matter jurisdiction may be raised at any time.[115] The disciplinary rules and opinions of this Court allow a respondent to raise and preserve defenses in an answer, pretrial conference, and brief in this Court. We note that Respondent raised defenses in both his Answer and Amended Answer. Prior to Respondent's Bar disciplinary proceeding, this Court explained in other cases that a legal error in the disciplinary proceeding could be waived when a respondent failed to make the supporting legal argument by declining the opportunity to brief the issue in this Court. *State ex rel. Oklahoma Bar Ass'n v. Gasaway, supra.* Respondent has not shown that requiring him to raise and preserve jurisdictional and constitutional defenses by pleading them in an answer, or amended answer, pretrial conference, or brief in this Court, has in any way caused prejudice to him, or hindered him, in his ability to submit defenses to this Court. Requiring Respondent to press his subject matter jurisdictional claims by answer, amended answer, pretrial conference, or brief in this Court does not deny Art. 2, § 7 due process to Respondent.

## IX. Civil Claim, Bar Grievance Against Third Party, and Investigation of the General Counsel of the Bar Association

■ ¶ 73 In both the disciplinary hearing and his petition to vacate Respondent seeks relief against a third party, G.B., the lawyer who represented him in his divorce proceedings in Oklahoma allegedly between 1980 and 1984. In his disciplinary proceeding Respondent filed a cross-complaint against the lawyer alleging that his lawyer committed acts of unprofessional conduct. He sought three types of relief against this lawyer: (1) professional discipline to be imposed against the lawyer, (2) monetary damages, and (3) an order requiring conveyance of an interest relating to oil and gas.

¶ 74 Respondent alleged that he filed with the Bar Association a professional grievance against his former lawyer and that his grievance had been before the Bar Association for more than ten years.[116] He also alleged that an oil and gas interest had been fraudulently obtained from him by his divorce lawyer, and that the income the lawyer had received from this interest exceeded twelve million dollars. In his disciplinary proceeding he requested as relief "the granting of a disgrogment [sic] order requiring the returning of all income to Cross–Complainant ... together with interest ... [and that the lawyer] be ordered to make a reconveyance of all of Cross–Complainant's right, title and interest in and to

**114.** *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir. 1990) (Asserting a personal jurisdictional defect in the answer did "not preserve the defense in perpetuity," and this defense "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct."), quoting *Burton v. Northern Dutchess Hosp.,* 106 F.R.D. 477, 481 (S.D.N.Y.1985) and *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). *See also Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1318 (9th Cir.1998) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the

course of conduct pursued by a party during litigation.").

**115.** *Shaffer v. Jeffery,* 1996 OK 47, 915 P.2d 910, 913.

**116.** *See* Respondent's "Cross Complaint and Counter Complaint," No. S.C.B.D. 4687, filed April 1, 2002, and "Respondent's Cross–Claimant's and Counter–Claimant's Application for Emergency Summary and Immediate Disposition Upon Partys' Complete Failure to Timely Answer *Qui Tam* Cross–Complaint and Counter–Complaint," No. S.C.B.D. 4687, filed June 13, 2002.

the McClure Lease."[117] Respondent alleged that this fraud occurred "[s]hortly after the divorce proceeding was concluded."[118] In addition to seeking relief against his former lawyer, Respondent also sought an order requiring an investigation of the General Counsel's office of the Oklahoma Bar Association with discipline to be imposed as warranted by that investigation.[119]

¶ 75 Respondent argues herein that this Court's opinions in *State ex rel. Oklahoma Bar Ass'n v. Bradley,* and *Matter of Evinger,*[120] "constitutes a denial of Mothershed's Oklahoma Constitution, Article 2, section 6, particularly not having addressed Mothershed's attorney's undisputed and undenied claims including damages which he has convincingly and continues to sustain injuries at the hands of an Oklahoma attorney ... fraudulent and conversion conduct...."[121] The rights protected by Oklahoma Constitution Art. 2, § 6[122] are basic and fundamental,[123] and they do not include a right of a respondent to inject into his or her professional disciplinary proceeding in this

Court any type of cause of action the respondent desires.

¶ 76 According to Okla. Const. Art. 7, § 7, a District Court of this State constitutes an omnicompetent, single-level, first-instance tribunal with "unlimited" original jurisdiction of all justiciable matters, except as otherwise provided in Article 7 of the Oklahoma Constitution and the Federal Constitution.[124] This original jurisdiction of a District Court extends to all actions in law and equity, and includes causes of action based upon tort and contract principles.[125] Respondent's allegations of fraud and request for relief seeking money damages and a transfer of an oil and gas interest are clearly within the subject matter jurisdiction of a District Court of this State.[126]

¶ 77 Respondent has not supplied legal authority for the proposition that this Court may adjudicate causes of action based upon allegations of fraud or contract principles in the context of a nonsupervisory original jurisdiction proceeding between two private parties. We doubt that such original jurisdiction exists due to the original jurisdiction

---

117. Respondent's "Cross Complaint and Counter Complaint," S.C.B.D. No. 4687, filed April 1, 2002, at p. 8 (material omitted and explanation added).

118. "Respondent's Cross–Claimant's and Counter–Claimant's Application for Emergency Summary and Immediate Disposition Upon Partys' Complete Failure to Timely Answer *Qui Tam* Cross–Complaint and Counter–Complaint," No. S.C.B.D. 4687, filed June 13, 2002, at p. 5.

119. Respondent's "Cross Complaint and Counter Complaint," S.C.B.D. No. 4687, filed April 1, 2002, at p. 8.

120. *State ex rel. Oklahoma Bar Ass'n v. Bradley,* 1987 OK 78, 746 P.2d 1130, 1134; *Matter of Evinger,* 1979 OK 127, 604 P.2d 844, 845.

121. Respondent's "Notice of Reservation Federal Claims, Issues, Rights, Questions, and Defenses," S.C.B.D. 4687, filed April 22, 2011, at pp. 7–8 (lawyer's name and additional material omitted).

122. Okla. Const. Art. 2, § 6: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

123. *Thayer v. Phillips Petroleum Co.,* 1980 OK 95, 613 P.2d 1041, 1044–1045.

124. *Jernigan v. Jernigan,* 2006 OK 22, ¶ 16, 138 P.3d 539, 545. *See also Colton v. Huntleigh USA Corp.,* 2005 OK 46, n. 4, 121 P.3d 1070 (An Oklahoma District Court possesses unlimited original jurisdiction of all justiciable matters, except as otherwise limited by the Oklahoma and Federal Constitutions.).

125. *Red Rock Mental Health v. Roberts,* 1996 OK 117, 1997 OK 133, 940 P.2d 486, 491 (The unlimited district court's range of cognizable claims extends to all actions in law and equity.); *State ex rel. Southwestern Bell Tel. Co. v. Brown,* 1974 OK 19, 519 P.2d 491, 495 (where an action is brought in tort the subject matter jurisdiction is properly laid in the District Court since that court has unlimited original jurisdiction of all justiciable matters, except as otherwise provided in Article 7 of the Oklahoma Constitution.); *Holleyman v. Holleyman,* 2003 OK 48, ¶ 17, 78 P.3d 921, 928 (District Courts have jurisdiction to adjudicate the existence and effect of contracts.).

126. Subject matter jurisdiction is invoked by the pleadings filed with the court which show the general nature of the case and request relief of the kind the court has power to grant. *Oklahoma Dept. of Securities ex rel. Faught v. Blair,* 2010 OK 16, ¶ 19, 231 P.3d 645, 657–658.

granted to District Courts by Article 7. For example, in *State ex rel. Cartwright v. Ogden*, several District Courts were simultaneously adjudicating identical issues relating to the State and School Lands Trust.[127] The Attorney General sought a supervisory extraordinary writ in this Court to arrest proceedings in District Courts in one district (First Judicial District) so that proceedings in another District Court (Seventh Judicial District) could be completed without an issue of conflicting jurisdiction. We relied upon Okla. Const. Art. 7, § 7 and observed therein that while nothing in Oklahoma's Uniform Trusts Act prevented a District Court from exercising jurisdiction over the Lands Trust, also "Nothing in the Oklahoma Constitution appears to confer original jurisdiction of such a trust in the Supreme Court."[128] We looked to the Constitution to determine if this Court had original jurisdiction over the cause of action and its subject. There is no authority cited in Respondent's Petition to Vacate or his Notice of Reservation that shows an exclusive original jurisdiction[129] in this Court to adjudicate causes of action based upon fraud and contract disputes between Respondent and his former lawyer.

¶ 78 Even if we were to assume that this Court had original jurisdiction to adjudicate causes of action of fraud and contract similar to those raised by Respondent, he would still not be entitled as a matter of right to relief in this proceeding. Because a District Court possesses jurisdiction to adjudicate causes of action based upon fraud and contract, any potential or assumed original jurisdiction by this Court over these causes of action would be *concurrent* with that jurisdiction in a District Court; and the exercise of original jurisdiction over those causes of action in this Court would thus be discretionary.[130] Discretionary original jurisdiction exercised by this Court is based upon a petitioner fulfilling specified burdens of procedure and persuasion. For example, one burden of procedure is that a petitioner must show why the action is brought in the Supreme Court instead of another court of competent jurisdiction.[131] A person seeking to invoke this Court's original and concurrent jurisdiction must explain why he or she bypassed the District Courts of this State and sought original relief in this Court. One reason for this procedure is that this Court is primarily a court of appellate jurisdiction.[132] Respondent made no showing in his disciplinary proceeding why this Court should exercise jurisdiction over causes of action based upon allegations of fraud and contract jurisprudence instead of Respondent seeking relief for such alleged injuries in a District Court. There was no error committed by this Court when it did not exercise subject matter jurisdiction over Respondent's claims against his former lawyer that were unrelated to the Bar's claims of unprofessional conduct of the Respondent.

¶ 79 Respondent asserted that he sought relief using a common-law *qui tam* remedy to

**127.** *State ex rel. Cartwright v. Ogden*, 1982 OK 82, 657 P.2d 142.

**128.** *State ex rel. Cartwright v. Ogden*, 1982 OK 82, 657 P.2d 142, 144. In *State ex rel. Cartwright* the Court exercised *supervisory* jurisdiction to arrest seven proceedings in four District Courts to avoid the possibility of conflicting decrees with a fifth District Court exercising jurisdiction over the controversy. *Id.* 657 P.2d at 144.

**129.** In *Keating v. Johnson*, 1996 OK 61, 918 P.2d 51, we explained that when a party's request for relief before this Court failed to show that it was within the exclusive original jurisdiction of the Court we analyzed the request on the assumption of the existence of concurrent jurisdiction with that of a District Court. *Id.* 918 P.2d at 55.

**130.** *Fent v. Contingency Review Board*, 2007 OK 27, ¶ 11, 163 P.3d 512, 521; *Keating v. Johnson*, 1996 OK 61, 918 P.2d 51, 55.

**131.** 12 O.S.2001 Ch. 15, App. 1, Okla. Sup. Ct. R. 1.191(b)(1).

**132.** *Keating v. Johnson*, 1996 OK 61, 918 P.2d 51, 56 (Since the time of Statehood this Court has explained that the framers of the Oklahoma Constitution intended the Supreme Court primarily as an appellate court.). *See also, State ex rel. Cartwright v. Dunbar*, 1980 OK 15, 618 P.2d 900, 912 ("In reference to the contention that Koehring is liable for 1978 taxes by reason of its legal and equitable ownership of certain properties, we hold the proper forum for litigating such controversy is in the District Court and not the Supreme Court in an original proceeding."). *Accord*, 12 O.S.2001 Ch. 15, App. 1, Okla. Sup.Ct. Rule 1.17 (lists the workload of the Court that may be divided into thirteen categories, and the citations of authority cited by the Court therein.).

prosecute his former lawyer and compel an investigation of the lawyers employed by the Bar Association.[133] Respondent did not cite any statute creating or recognizing a *qui tam* remedy for the cause of action and remedies he sought.

¶ 80 In *Bass Angler Sportsman Soc. v. U.S. Steel Corp.*, 324 F.Supp. 412 (S.D.Ala. 1971), *aff'd.*, 447 F.2d 1304, the court stated the following:

> Historically a qui tam action is one brought by an informer under a statute which establishes a penalty or forfeiture for the commission or omission of some act, and which additionally provides for the recovery of the same in a civil action with part of the recovery to go to the person bringing the action. None of the many cases cited in briefs approved a qui tam action to collect a criminal fine. All involved civil penalties or forfeitures. *All of the qui tam cases also recognize the statutory origin of the right of action. It arises not from a statutory right to share in the penalty but from the express or implied statutory grant of authority to maintain the action.* Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1868). A corollary to this principle is that even where some statutory language seems to grant a private right of action, if the same or a related statute also clearly places enforcement in the hands of governmental authorities the right of action is exclusively vested in such governmental authority. *Williams v. Wells Fargo & Express Co.*, 177 F. 352 (8th Cir.1910); *Rosenberg v. Union Iron Works*, 109 F. 844 (N.D.Calif.1901).

*Id.* 324 F.Supp. at 415 (emphasis added and note omitted)

This view that a modern *qui tam* remedy is based upon a statute creating that remedy

has also been explained by various authors. One example is as follows.

> Qui tam proceedings began as avenues for plaintiffs to get access to royal courts by alleging that not only were the plaintiff's private interests involved, but that the interests of the king were at stake as well. By the fourteenth century, as royal courts became generally available to resolve purely private disputes, the need for common law qui tam fell away. By the period immediately before and after the framing of the United States Constitution, common law qui tam was dying out altogether, both in England and in the Colonies as well.
>
> ... *Qui tam became available, if at all, only through statutes.* In an ironic twist, while common law qui tam had required the assertion that the king's interest was at stake, statutory qui tam instead required the assertion that a private interest was at stake in order to satisfy the requirement of standing.

John Martinez, *Getting Back the Public's Money: The Anti–Favoritism Norm in American Property Law*, 58 Buff. L.Rev. 619, 628 (2010), (emphasis added).

In other words, the common-law version of *qui tam* died out as the courts in England provided remedies for purely private wrongs and Parliament passed statutes creating statutory *qui tam* remedies where a public wrong was involved. *Id.* This view is supported by the United States Supreme Court's view that "Although there is no evidence that the Colonies allowed common-law *qui tam* actions (which, as we have noted, were dying out in England by that time), they did pass several informer statutes expressly authorizing *qui tam* suits." *Vermont Agency of Natural Resources v. United States ex rel. Ste-*

---

**133.** A slight variation on the meaning of the abbreviation *"qui tam"* may be found, but the basic meaning has not changed. For example, some courts state that *"qui tam"* is an abbreviation for *"qui tam pro domino rege quam pro seipso,"* which literally means "he who as much for the king as for himself." *U.S. ex rel. S. Prawer and Co. v. Fleet Bank of Maine*, 24 F.3d 320, n. 7, 324 (1st Cir.1994), citing *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, n. 1, 647 (D.C.Cir.1994). *See also U.S.*

*ex rel. Falsetti v. Southern Bell Tel. and Tel. Co.*, 915 F.Supp. 308, 309, n. 1, (N.D.Fla.1996). A similar definition is that *"qui tam"* is an abbreviation of the Latin phrase *qui tam pro domino rege quam pro si ipso in hac parte sequitur,* which means "Who sues on behalf of the King as well as for himself." *U.S. v. Florida–Vanderbilt Development Corp.*, 326 F.Supp. 289, 290 (S.D.Fla. 1971) citing *Osborne's Concise Law Dictionary* (5th ed.).

*vens,* 529 U.S. 765, 776, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

■ ¶ 81 Respondent seeks an alleged common-law *qui tam* remedy to compel a prosecution of alleged professional misconduct and an investigation of the Bar Association.[134] He thus seeks to breathe new life into the old common-law *qui tam* remedy, a nonstatutory remedy, for which there is no evidence that the Colonies ever allowed. In essence, and in more modern language, Respondent claims a right to non-Hohfeldian standing to prosecute alleged public wrongs.[135]

■ ¶ 82 This Court has never approved of a general class of non-Hohfeldian private parties who may bring public actions for the vindication of public rights and the correction of purely public wrongs of whatever nature. Forms of action have long been abolished in this State,[136] and Okla. Const. Art. 2, § 6 indicates that judicially cognizable wrongs are not defined by particular remedies.[137] This means, in part, that for Respondent to use the common-law *qui tam* remedy, *as a remedy,* he must possess, as a private individual, a legal or justiciable right to act for the public to prosecute public wrongs of the nature that were raised by his pleadings in his disciplinary proceeding. A particular remedy available at common law does not determine a legally cognizable right, but rather a legally cognizable right determines that a remedy pursuant to Art. 2, § 6 must be available. For example, in the context of a discussion of Art. 2, § 6 and fashioning a remedy, in *Ethics Commission v. Cullison,* we explained that "... the question of whether a court should grant ... [a particular remedy] is not a question of the power or jurisdiction of the court to grant the relief, but the appropriateness of that particular procedure or remedy for the particular justiciable controversy." [138]

¶ 83 None of Respondent's filings in his disciplinary proceeding show a legal argument with supporting authority that Respondent possesses a legally cognizable right to act as a prosecutor in a Bar disciplinary proceeding or a legally cognizable right to demand an investigation of the General Counsel's Office of the Bar Association.[139]

134. *Qui tam* remedy provided for the recovery of funds. Respondent's *qui tam* request for prosecution of Bar discipline against another lawyer and an order compelling an investigation of the Bar Association are closer to the remedies of injunction and mandamus. See discussion in note 135 *infra.*

135. A non-Hohfeldian plaintiff sues to secure judicial relief that would benefit a public entity or the community as a whole. *State ex rel. Macy v. Bd. of County Comr's of Oklahoma County,* 1999 OK 53, n. 28, 986 P.2d 1130, 1138; *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Ass'n,* 1997 OK 37, n. 23, 936 P.2d 916, 924; *Flast v. Cohen,* 392 U.S. 83, 118–120, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Jaffe, *The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff,* 116 U.Pa.L.Rev. 1033 (1968). *See also* Jaffe, *Standing to Secure Judicial Review: Public Actions,* 74 Harv. L.Rev. 1265, 1269, 1273–1274 (1961) (prototypes for the current public action brought by a non-Hohfeldian plaintiff are found in both the historic prerogative writ of mandamus and the bill in equity for an injunction which tested the legality of public officials' conduct). A Hohfeldian plaintiff seeks to adjudicate a claimed right, privilege, immunity, or power with respect to another party. *State ex rel. Macy v. Bd. of County Comr's of Oklahoma County,* 1999 OK 53, n. 28, 986 P.2d at 1138.

136. *Ethics Commission v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1073 ("Since 1893 this jurisdiction has recognized that forms of action are abolished.").

137. *Ethics Commission v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1073.

138. *Ethics Commission v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1073 (material omitted and explanatory phrase substituted).

139. The issue raised by Respondent is similar to that discussed in *State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck,* 1988 OK 38, 753 P.2d 1356, where we explained that the subject matter jurisdiction of the court to hear an *in rem* civil forfeiture proceeding was not invoked by the filing of a criminal information charging the unlawful sale of marijuana. In the present case the Bar's invocation of this Court's exclusive original jurisdiction to adjudicate Bar discipline by the filing of the formal complaint did *not* invoke subject matter original jurisdiction to adjudicate tort and contract disputes between Respondent and his former lawyer, or any subject matter original jurisdiction to adjudicate a public wrong prosecuted by a private party. Respondent's cross-complaint raising these nondisciplinary claims is similarly flawed in that the original subject matter jurisdiction of this Court is not created merely by allegations in a pleading, but

The face of the record in Respondent's disciplinary proceeding fails to show any deprivation of Okla. Const. Art. 2, § 6. Respondent's failure to show any Art. 2, § 6 deprivation also means that no violation of Oklahoma's Due Process Clause occurred when Respondent failed to obtain relief on these issues in his disciplinary proceeding. The absence of violations of the Oklahoma Constitution also shows that in this vacation proceeding no jurisdictional issue is presented on these grounds.

### X. Conclusion

¶ 84 We hold prospectively that the statutory procedure for vacating judgments in a District Court, 12 O.S. §§ 1031–1038, inclusive, is not applicable in a Bar disciplinary proceeding. We have examined Respondent's *allegations relating* to jurisdiction herein. Respondent made a general appearance in this disciplinary proceeding and his claim of a lack of personal jurisdiction is without merit. Respondent frames his other claims as violations of constitutional principles that he then attempts to characterize as jurisdictional via the Oklahoma Due Process Clause. These claims are not jurisdictional. For example, Respondent's claim of noncompliance with the literal language of Rule 6.7 is a claim of legal error and is not jurisdictional. As a nonjurisdictional claim, any legal error in granting the six-month continuance is not a jurisdictional flaw on the face of the record and is not grounds for vacating Respondent's disbarment. We have also concluded that the claims raised by Respondent are without merit, and that his petition to vacate his disbarment and all other requests for relief should be denied.

¶ 85 Respondent's petition to vacate his disbarment is denied. Respondent's request to expunge his Oklahoma professional disciplinary records is denied. Respondent's request for relief against his former lawyer is denied. Respondent's request for relief against the Oklahoma Bar Association is denied. All other relief requested by Respondent in his Petition to Vacate and Notice of Reservation is denied.

¶ 86 TAYLOR, C.J., COLBERT, V.C.J., and KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, JJ., concur.

¶ 87 GURICH, J., recused.

---

allegations showing that the Supreme Court has the adjudicative power to proceed *in a case of the character presented by those allegations. Id.* 753 P.2d at 1359. Respondent failed to satisfy this requirement.